199    447
203    599
206    293
206    295
e108a  138
108a   140

AGNES R. MANNING *et al.*

*v.*

HARRIET SPURCK *et al.*

*Opinion filed October 25, 1902—Rehearing denied December 9, 1902.*

MARRIAGE—*what sufficient proof of marriage.* If the parties to an intended marriage supposed that the decree of divorce obtained by the husband from a former wife was legal although it was in fact void for want of jurisdiction, the fact that they lived together as man and wife after the death of such former wife, with the continued desire and intention of being married, is sufficient proof of a common law marriage.

APPEAL from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

WINSLOW EVANS, (JACK & TICHENOR, of counsel,) for appellants.

STEVENS, HORTON & ABBOTT, for appellee Mary A. Selby.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Mary A. Selby, one of the appellees, filed in the circuit court of Peoria county her petition for the assignment of dower and homestead in the real estate of which James Selby died seized, and appellants filed their bill, as heirs-at-law of said James Selby, deceased, for partition of the same real estate. The cases were consolidated, and it was ordered that the petition for dower

should stand as a cross-bill in the partition suit. The answers to the petition denied that petitioner was the lawful wife of James Selby at the time of his death, or that she was his widow. Replications having been filed, the issue was referred to the master in chancery to take the evidence and report his conclusions. He took and reported the evidence, with his conclusion that petitioner was the lawful wife of James Selby at the time of his death, and that she was his widow and entitled to homestead and dower in his real estate. Exceptions to the report were overruled and the report was approved. A decree was entered accordingly, and the appellants took this appeal.

The history of the marital relations of both parties is as follows: The petitioner, Mary A. Selby, had been the wife of George C. Smith and had two children by him. She obtained a divorce from him in the court of common pleas of Elkhart county, Indiana, on January 10, 1867, and afterward resided in the city of Quincy, in this State. James Selby was married three times. There were two children of the first marriage, and his wife having died, he was married in 1853 to Sarah Jane Bodenheimer, and there were four children of that marriage. They separated and lived apart from each other. He filed his petition for divorce from her on May 5, 1867, in the court of common pleas of Allen county, Indiana. The petition was signed by an attorney and accompanied by an affidavit of non-residence made by the same attorney. Publication to the defendant, Sarah Jane Selby, was made and the cause was heard at the June term, 1867, when the following entry was made by the judge on the court docket: "Thirteenth day, publication proved, default taken, case submitted to court and judgment for divorce." No judgment or decree was entered of record at that time in the case. James Selby and his wife, Sarah Jane, were both residents of and domiciled in Peoria, in this State, and neither of them had any residence in Indiana.

On January 30, 1868, Sarah Jane Selby filed her bill against James Selby for separate maintenance, in the circuit court of Peoria county, where both parties resided, alleging her marriage to him; that there were four children, the offspring of said marriage, and that the defendant had deserted her and her children without any just cause or provocation. At the June term, 1868, of said circuit court, a decree was entered reciting that the complainant, Sarah Jane Selby, appeared; that the defendant, James Selby, entered his appearance by his solicitor, not confessing any of the matters alleged in the bill against him, except that he was married to the complainant at the time and place alleged and that the said children were the legitimate offspring of said marriage, and by agreement of the parties the custody of the children was awarded to Sarah Jane Selby, and she was given certain real estate and $1000 for her separate maintenance. The defendant was ordered to pay $200 a year for the support of each of the children until they arrived, respectively, at the age of eighteen years. The decree was by consent and agreement, and provided that it should be lawful for the parties to live separate and apart, and that the performance of the decree should discharge James Selby from all claims, demands and liabilities incident to and growing out of the marital relation of the parties, and should be a bar and acquittance to all present and future claims of the complainant. The court of common pleas of Allen county, Indiana, having been abolished and its records, files and jurisdiction transferred to the circuit court of said county, James Selby filed his petition in said circuit court at the February term, 1874, setting forth the proceedings for divorce in 1867, the rendition of judgment and the neglect of the clerk to enter such judgment, and he moved the court to order and direct the clerk to enter such judgment *nunc pro tunc* of the date when it was actually rendered. The court heard the motion and granted it, and the judgment or

decree was entered *nunc pro tunc* as of the time when the proceedings were had, in 1867.   On July 8, 1875, James Selby and the petitioner, then Mary A. Smith, were formally married at Quincy, in this State, where she resided, by Rev. Peter Wallace, a minister of the Methodist Episcopal Church.   Immediately after their marriage they came to Peoria, and lived there publicly and prominently as husband and wife for about twenty-five years, until his death, on March 9, 1900.   He was a prominent business man, engaged in manufacturing in said city of Peoria, during all that time.   At the time of this marriage Sarah Jane Selby was living in Peoria, and continued to live there until her death, which occurred December 6, 1898.   The validity of the marriage between James Selby and the petitioner was never questioned by anybody until this suit, and during its existence Sarah Jane Selby never claimed to be his wife nor raised any question as to the legality of his marriage to petitioner.   The children, who grew to adult age during that period, never questioned the legality of the marriage, and the evidence shows that it was understood by all the parties interested, and the general public, to be legal and valid.   During the year and three months after the death of Sarah Jane Selby the petitioner and James Selby continued to live together, as before, in the relation of husband and wife, and with the same general and public repute.

Neither James Selby nor Sarah Jane Selby was domiciled in the State of Indiana at the time of the proceedings for divorce in that State, and the court had no jurisdiction of their status, which constituted the subject matter of the suit.   There was only constructive notice by the Indiana court upon Sarah Jane Selby, and no valid divorce could be decreed.   (*Dunham* v. *Dunham*, 162 Ill. 589; *Bell* v. *Bell*, 181 U. S. 175.)   The court had no jurisdiction to hear the cause, and the decree of divorce being void, James Selby had a lawful wife living at the time of his marriage to the petitioner.   The ceremonial

marriage between them was therefore void, and the master so found, and no exception was taken to that finding. The marriage relation between James Selby and Sarah Jane, however, came to an end by the death of the latter on December 6, 1898, and thereafter there was no legal obstacle to a marriage between him and the petitioner. The question, therefore, is, whether the facts establish a marriage after the legal impediment was removed, or whether they will justify a presumption of such marriage. In *Cartwright* v. *McGown*, 121 Ill. 388, the court stated a rule applicable to such cases, as follows (p. 404): "Where both parties are married in the honest belief, founded on an apparently good reason, that they are capable of entering into the marriage contract, when, in fact, one of them is not, if they continue to cohabit as man and wife after the removal of the impediment to their lawful union the law will presume a common law marriage by the acts of the parties, in the absence of any evidence to prevent such presumption." In the later case of *Robinson* v. *Ruprecht*, 191 Ill. 424, where the relation between the parties, beginning in 1869, was meretricious in its inception and a marriage was celebrated between them in 1873, which was illegal and did not change their adulterous relation, for the reason that the man had, as he well knew, a legal wife, but the legal wife subsequently died and the parties continued to cohabit as husband and wife after the impediment to their legal union ceased to exist, it was decided that a common law marriage was established. The petitioner in this case presents a much stronger and more meritorious case than was made in that one. She has been guilty of no wrong or immorality and did not enter into an adulterous and meretricious relation with James Selby. It is beyond question that there was never a doubt in her mind as to the propriety or legality of her relation to him, and that she was wholly innocent of any intent to do wrong. When her marriage was solemnized by a minister and according to the statute, she immedi-

ately came to Peoria with her husband and was installed as his wife and head of the house in a lawful and honorable relation, in which she continued to live publicly for twenty-five years. It is clear that if the presumption of lawful marriage can be applied in any case, it ought, in justice to her, to be applied in this one. So far as James Selby was concerned, he was chargeable with a knowledge of the law that he had no right to marry the petitioner if he had no divorce from his former wife; but if he was bound, under the circumstances, to know the laws of the State of Indiana, he must, as a matter of fact, have supposed that the divorce which he obtained was valid. The judgment of divorce had, in fact, been rendered in Indiana, and had been entered *nunc pro tunc* after the separate maintenance proceedings and before this marriage. The record of the separate maintenance proceedings impresses us as a method adopted for giving the wife a certain sum to satisfy any claim she might have and providing for the support and education of the children. There was nothing litigated and the decree shows that nothing was confessed, except the marriage at the date alleged in the bill and the birth of the children.

It is probably a safe rule to say that if parties to a marriage, in the beginning, desire and intend marriage in good faith, as a matter of fact, but an impediment exists, and the desire and intention continue after the impediment is removed, and the parties continue in the relation of husband and wife and cohabit as such, it is sufficient proof of a marriage. It cannot be doubted that both James Selby and Sarah Jane Selby believed, at the time of this marriage, that he had been divorced from her. It is not reasonable to suppose from the manner in which the parties lived, the prominence of James Selby as a well-known citizen and the presence of his former wife in the same city, that he willingly incurred the risk of a criminal prosecution with knowledge, in fact, that the divorce was void. It is true that a relation which

is illicit and meretricious in its inception is presumed to continue of the same character, and there must be evidence, in such a case, that there has been a change and the relation has become matrimonial in intent and character. In this case the original relation between these parties was not meretricious in its inception, which means merely lustful and pertaining to the character of prostitution. It is not possible to conceive that they intended anything except marriage when it was solemnized at Quincy, and from that time to the death of James Selby. When he procured the decree of divorce in Allen county, Indiana, it was not done with any intention of entering into any relation with the petitioner. Eight years elapsed between the divorce and their marriage, during which time there was no relation between them, and there is no evidence that they even met during that time. There was no necessity of any change to a new relation after the death of Sarah Jane Selby, and there necessarily could not be any such proof from the fact that there was never any question of the legality of the marriage. It was not necessary, as it was in *Robinson* v. *Ruprecht, supra,* to prove that the cohabitation had lost its lustful character and become matrimonial in character. The relation of the parties after the impediment was removed by the death of Sarah Jane Selby was matrimonial in fact, as it had been in the honest belief and intent of the parties before that time.

We think that the evidence proves a common law marriage, and that the master and chancellor were right in their conclusion that the petitioner was the wife of James Selby at the time of his death and is now his widow.

The decree is affirmed.                    *Decree affirmed.*