Land v. Land.

|108   131|
|a206s 288|

## William B. Land, otherwise William B. Tuttle, et al., v. Frank E. Land et al.

1.  HUSBAND AND WIFE—*A Party Not Legally Divorced, Attempting in Good Faith to Re-marry, May Contract a Common Law Marriage.*— If parties to a marriage, in the beginning, desire and intend marriage in good faith, as a matter of fact, but an impediment exists, and the desire and intention continue after the impediment is removed, and the parties continue in the relation of husband and wife, and cohabit as such, it is sufficient proof of a common law marriage.

**Bill to Declare a Marriage Void.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in this court at the October term, 1902.   Affirmed.   Opinion filed May 28, 1903.

C. STUART BEATTIE, attorney for appellants.

Marriage of a man and woman, where either of them has a wife or husband by a prior marriage, then living and undivorced, is void and not merely voidable.   Cartwright v. McGown, 121 Ill. 388; Reeves v. Reeves, 54 Ill. 332; Drummond v. Irish, 52 Ia. 41; Blossom v. Barrett, 37 N. Y.

434; Janes v. Janes, 5 Blackf. 141; Tefft v. Tefft, 35 Ind. 44; Glass v. Glass, 114 Mass. 563; Martin's Heirs v. Martin, 22 Ala. 86.

"Honest belief" is no excuse for negligence in inquiry. Gordon v. Gordon, 141 Ill. 160.

A common law marriage can not be presumed against the facts in evidence. Presumption must yield to the force of direct and positive proof. Hantz v. Sealy, 2 Binn. 405.

CRATTY BROS., JARVIS & LATIMER, attorneys for appellees.

Recitals in deeds executed or accepted by the parties in which they are designated as husband and wife are strong evidence of marriage. They are deliberate, solid admissions, against interest, and entitled to great weight. Despain v. Wagner, 163 Ill. 598–600.

Direct evidence of the celebration, or agreement to become husband and wife, is never necessary. The fact of marriage may be established as well by circumstantial as by direct evidence. Manning v. Spurck, 199 Ill. 447–452; Elzas v. Elzas, 171 Ill. 632; Miller v. White, 80 Ill. 580–585.

Admissions and declarations of the parties are direct evidence of marriage standing on a higher plane than the presumptions arising from cohabitation and reputation. Lowery v. People, 172 Ill. 466.

Marriage being a civil contract, in determining its existence the court will ascertain the intent of the parties, and the intentions to enter into the marriage relation being shown, the court will enforce the contract. Manning v. Spurck, 199 Ill. 447; Robinson v. Ruprecht, 191 Ill. 424; Hutchinson v. Hutchinson, 96 Ill. App. 66; Teter v. Teter, 101 Ind. 129; Schuchart v. Schuchart, 50 L. R. A. 180; 61 Kan. 597; Elzas v. Elzas, 171 Ill. 632, 634.

If, in ignorance of a nullifying impediment, parties desiring and intending marriage cohabit as husband and wife, and declare themselves to be such, and continue to do so after the removal of the impediment, a marriage will be presumed. Manning v. Spurck, 199 Ill. 447; Cartwright v. McGown, 121 Ill. 401; Robinson v. Ruprecht, 191 Ill. 424; Teter v. Teter, 101 Ind. 129; Poole v. People, 24 Colo. 510–

Land v. Land.

514; 1 Bishop, Marriage, Divorce and Separation, Sec. 970, 974, 975, 979; Elzas v. Elzas, 171 Ill. 632; Blanchard v. Lambert, 43 Ia. 228; 22 Am. Rep. 245; Stein v. Stein, 66 Ill. App. 526; Schuchart v. Schuchart, 50 L. R. A. 180; 61 Kansas 597; Barker v. Valentine, 51 L. R. A. 787; 125 Mich. 336; Hutchins v. Kimmell, 18 Am. Rep. 164; 31 Mich. 126; Fenton v. Reed, 4 Johnson 51; Wilkinson v. Payne, 4 Durn. & East's Rep. 468; Megginson v. Megginson, 14 L. R. A. 540; 21 Ore. 387; Adger v. Ackerman, 115 Fed. Rep. 124; People v. Booth, 121 Mich. 131; 79 N. W. Rep. 1100; Taylor v. Taylor, 71 N. Y. Supp. 411.

Where a woman's second marriage is shown in fact, the law raises a strong presumption in favor of its legality, which is not overcome by mere proof of a prior marriage, and that the first husband is living and she had not obtained a divorce. The husband may have obtained a divorce and thus left her free to marry again. Coal Run Coal Co. v. Jones, 127 Ill. 379, 385; Boulden v. McIntire, 119 Ind. 574, citing Harris v. Harris, 8 Ill. App. 57; Cartwright v. McGown, 121 Ill. 388; Blanchard v. Lambert, 22 Am. Rep. 245; 43 Ia. 228; Johnson v. Johnson, 114 Ill. 611; Schuchart v. Schuchart, 50 L. R. A. 180; 61 Kan. 597; Hunter v. Hunter, 31 L. R. A. 411; 111 Cal. 261; Franklin v. Lee, 62 N. E. Rep. 78 (Ind.).

Death will also be presumed in order to uphold the marriage. Harris v. Harris, 8 Ill. App. 57; Stein v. Stein, 66 Ill. App. 526; Johnson v. Johnson, 114 Ill. 611–617, and cases cited; Cartwright v. McGown, 121 Ill. 406, and cases cited; Hunter v. Hunter, 31 L. R. A. 411; 111 Cal. 261; Blanchard v. Lambert, 43 Ia. 228; Schuchart v. Schuchart, 50 L. R. A. 180; Cash v. Cash, 67 Ark. 278.

If a marriage of cohabitation and repute solely is not good where first contracted, if the parties during the continuance of that relation go into and live in a state or country where such a marriage is valid, then, the marriage relation having once been so consummated, they will remain husband and wife in any other state where they may afterward go. Hynes v. McDermott, 91 N. Y. 451; 43 Am. Rep. 677.

MR. JUSTICE WINDES delivered the opinion of the court.

The appellant William B. Land, with other beneficiaries under the will of Nellie M. Land, deceased, and the appellant The Northern Trust Co., as trustee under said will, filed their bill seeking to have declared void an alleged marriage between said Nellie M. Land and the appellee Frank E. Land, and that said Frank be declared not to be entitled to any share in the estate of said Nellie; also for other and general relief. The other appellees, it is alleged, also claim an interest in said estate as assignees of said Frank E. Land, and are made parties defendant. The defendants all answered and filed their cross-bill, by which they seek a decree that said Frank E. and Nellie M. Land were lawfully married on April 14, 1887, and at other dates thereafter, and that said Frank be declared the lawful surviving husband of said Nellie and entitled to share in her estate, both real and personal. The cross-bill was answered, issues made upon both the bill and cross-bill, and the cause referred to a master to take testimony, which was done. The cause was tried by the chancellor upon the testimony and evidence taken and offered before the master, and a decree entered dismissing the original bill for want of equity, and adjudging that said Nellie was, during several years last prior to her death, the lawful wife of said Frank, and that he, on her death, March 6, 1900, became and now is her lawful widower, and as such entitled to his proper and lawful share in her estate; also that the cross-bill be retained for such further order or decree as might from time to time be advisable. From this decree the appeal herein was taken.

The principal and controlling question presented by the briefs of counsel and oral arguments of the cause, is as to whether said Nellie M. and Frank E. Land were lawfully married during the lifetime of the former. If they were, then the decree is correct.

The evidence shows, in substance, among other things not necessary to be stated, that the maiden name of said Nellie was Ellen or Nellie Moore; she was lawfully mar-

Land v. Land.

ried to one Ralph S. Tuttle August 29, 1872, but obtained a decree of divorce from him in the Superior Court of Cook County, which was entered of record April 19, 1887, for desertion; the hearing on her bill for divorce which resulted in said decree, was had on April 9, 1887, and at the close of the evidence that the judge before whom the hearing was had said "Decree;" said Nellie then went up to the judge and thanked him and left the court, as the evidence tends to show, under the belief that she had been granted a divorce from said Ralph S. Tuttle; on the same day, April 9, 1887, the evening issue of the Daily News of Chicago published an account of said hearing, and stated, in substance, that a decree had been entered; said Frank saw the said account of the hearing of the divorce case about five o'clock the same day, and was given the same information by Mrs. Tuttle and Mrs. Sophronia Baker, a friend of Mrs. Tuttle, who was present at the hearing; Mrs. Tuttle and Land, on the 14th of April, 1887, went from Chicago to Laporte, Indiana, so that her adopted son, said William, who was there at school, could be present, and there they had a marriage ceremony performed between them, pursuant to a marriage license issued the same day by the clerk of the Circuit Court of Laporte County, Indiana, the ceremony purporting to have been solemnized by one "W. Scott, rector;" after said marriage ceremony said Nellie and Frank lived and cohabited together and were known among their friends and associates as husband and wife for at least two years, first for a few days at Laporte, Indiana, then for a short period at a sporting house kept by said Nellie on Dearborn street, in Chicago, and the remainder of the time at the home of said Frank on Park avenue in Chicago; in the spring of 1889 said Frank, who had been engaged in the shoe business, failed, and soon thereafter said Nellie left the Park avenue house, and from that time up to her death kept a house or houses of assignation in Chicago, though during a part of the time she rented rooms or flats elsewhere, which were from time to time occupied by her, said Frank and her adopted son, the appellant William B. Land:

at the places where she kept her houses of assignation said Nellie was known and went by the name of Nellie M. Tuttle or Mrs. Tuttle, the same name by which she was known prior to the said marriage ceremony between her and Land; prior to said marriage ceremony said Nellie for many years was the proprietress of and kept a house or houses of assignation in Chicago, and while engaged in that business made the acquaintance of said Frank about the year 1885, from which date up to the time of said marriage ceremony she associated from time to time with Land, though there is no positive evidence of any illicit relations between them; it is apparent from the evidence she began the divorce proceedings which resulted in the decree mentioned for the purpose of marrying said Frank, and it seems a fair and reasonable inference from the evidence that she intended when she procured the divorce to marry him and pursue thereafter a different and respectable life, and did so, as the evidence tends to show, from the time they commenced to live at the Park avenue house until Land failed in business, about two years afterward. There is no evidence, which has been called to our attention, or which we have been able to discover, of any divided reputation as to the relations between said Nellie and Frank while they lived at the Park avenue house—on the contrary, during the whole of this period their ostensible relations were that of husband and wife, they being known as such among their friends and acquaintances, and he introduced and spoke of her as his wife, and she introduced and spoke of him as her husband. During this period, and as late as the year 1891, Nellie M. Land, by that name, signed and acknowledged divers conveyances of real and personal property to different persons, and received conveyances under that name, in some of which she is described as the wife of Frank E. Land, and in others Frank E. Land is described as her husband. On February 23, 1889, she procured a judgment in the name of Nellie M. Land against Frank E. Land, a written satisfaction of which she acknowledged on January 30, 1891, before a notary public, under the same name. Under date

Land v. Land.

of January 15, 1894, she executed her last will, under which the appellants in this case claim their rights, by the name of Nellie M. Land. The clear preponderance of the evidence is that said Nellie and Frank fully believed on April 14, 1887, that she had been divorced from said Tuttle, and that they in good faith intended, by virtue of said marriage ceremony, to contract a legal marriage, and would have done so but for the fact that her decree of divorce had not been entered of record. It does not appear that during her lifetime either she or said Frank had any knowledge that the divorce decree had not been entered at the time of the marriage ceremony. He testifies that he did not know of that fact until after her death.

By decree of the County Court the appellant, William B. Land, was, February 3, 1883, upon the petition of Nellie M. Tuttle and Ralph S. Tuttle, legally adopted under the name of William Bliss Tuttle, by which name he seems to have been known and called up to the time the said Nellie M. and Frank E. Land began living together as husband and wife. From that time on, he became and was known and called William B. Land.

It is claimed on behalf of appellants, and numerous authorities are cited in support of the contention, that said Nellie did not become the lawful wife of said Frank, mainly because of the fact that at the time of the marriage ceremony her divorce decree from Ralph S. Tuttle had not been entered; that this attempted marriage was void, and being void, their subsequent life, as shown by the evidence, was not such as to create a valid common law marriage. Especial reliance is placed upon the case of Cartwright v. McGown, 121 Ill. 386-404, in which the court uses the following language:

"When both parties are married in the honest belief, founded on an apparently good reason, that they are capable of entering into the marriage contract, when in fact one of them is not, if they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law will presume a common law marriage by the acts of the parties, in the absence of any evidence to

prevent such presumption. In such a case there are many strong and cogent reasons for presuming a new marriage after the removal of the impediment, even though the parties may not have known of its removal. There the cohabitation, in ignorance of facts rendering it illegal, is not to be regarded as meretricious or criminal until the parties have knowledge of such facts. Their purpose in such a union is honorable marriage, which the law favors, and not mere illicit intercourse."

It was argued that there was no "honest belief founded upon an apparently good reason," using the language of the Supreme Court, on the part of these parties for believing that at the time of the marriage ceremony a divorce from Tuttle had been granted; that they should have looked to the court record instead of relying upon what the judge said and the publication in the daily press. We think the parties were justified, under the circumstances above detailed, in believing that the divorce had been granted, and therefore that the Cartwright case is not controlling. We are also of opinion that the contention of appellant's counsel that their cohabitation was illicit in its inception, is not supported by the evidence, and therefore what was said in the Cartwright case in that regard does not avail appellants.

If, however, it can be said that the decision of the Cartwright case supports this contention of appellants, we are of opinion the authority of that case must yield to the later expressions of the Supreme Court as contained in Robinson v. Ruprecht, 191 Ill. 424–35, and Manning v. Spurck, 199 Ill. 447–51. In the last case cited, the court in its decision makes reference to both the Cartwright and Robinson cases, and makes use of the language quoted below, which, considered with reference to the facts of the case at bar, is controlling and decisive. The court say:

"The petitioner in this case presents a much stronger and a more meritorious case than was made in that one (referring to the Cartwright case). She had been guilty of no wrong or immorality, and did not enter into an adulterous and meretricious relation with James Selby. It is beyond question that there was never a doubt in her mind

Land v. Land.

as to the propriety or legality of her relation to him, and that she was wholly innocent of any intent to do wrong. * * * It is probably a safe rule to say that if parties to a marriage, in the beginning, desire and intend marriage in good faith, as a matter of fact, but an impediment exists, and the desire and intention continue after the impediment is removed, and the parties continue in the relation of husband and wife and cohabit as such, it is sufficient proof of a marriage.· It can not be doubted that both James Selby and Sarah Jane Selby believed, at the time of this marriage, that he had been divorced from her. It is not reasonable to suppose from the manner in which the parties lived, the prominence of James Selby as a well-known citizen, and the presence of his former wife in the same city, that he willingly incurred the risk of a criminal prosecution with knowledge, in fact, that the divorce was void. It is true that a relation which is illicit and meretricious in its inception is presumed to continue of the same character, and there must be evidence, in such case, that there has been a change and the relation has become matrimonial in intent and character. In this case the original relation between these parties was not meretricious in its inception, which means merely lustful, and pertaining to the character of prostitution. It is not possible to conceive that they intended anything except marriage, when it was solemnized at Quincy, and from that time to the death of James Selby, when he procured the decree of divorce in Allen county, Indiana, it was not done with any intention of entering into any relation with the petitioner. Eight years elapsed between the divorce and their marriage, during which time there was no relation between them, and there is no evidence that they even met during that time. There was no necessity of any change to a new relation after the death of Sarah Jane Selby, and there necessarily could not be any such proof from the fact that there was never any question of the legality of the marriage. It was not necessary, as it was in Robinson v. Ruprecht, *supra*, to prove that the cohabitation had lost its lustful character and become matrimonial in character. The relation of the parties after the impediment was removed by the death of Sarah Jane Selby was matrimonial in fact, as it had been in the honest belief and intent of the parties before that time. We think that the evidence proves a common law marriage, and that the master and chancellor were right in their conclusion that the petitioner was the wife of James Selby at the time of his death and is now his widow."

It seems to us unnecessary, in view of the decision in the Manning case, which is so closely analogous in its facts to this case, to discuss the other claims of counsel or the application of the various other authorities referred to by him.

We are of opinion that the evidence in the record shows that said Nellie and Frank intended, at the time of the marriage ceremony, to enter into the marriage relation, and having lived together continuously as husband and wife for two years after the entry of the decree of divorce in favor of said Nellie from Ralph S. Tuttle, it can not be said that their relation was meretricious, but it was matrimonial in character; that as soon as the impediment against said Nellie's entering into the marriage contract was removed by the divorce, their relation became, as is said by the court in the Manning case, "matrimonial in fact, as it had been in the honest belief and intent of the parties before that time." We think the evidence clearly sustains the decree of the chancellor, and it is therefore affirmed.