*In re* ESTATE OF MICHAEL L. OLENICK, Deceased.

First District (2nd Division)   No. 1—89—1589

Opinion filed September 28, 1990.

Schiller, Du Canto & Fleck, Ltd., of Chicago (Sarane C. Siewerth, of counsel), for appellant.

Charles Kraut, Ltd., of Chicago (Samuel J. Cahman, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Sharran Greenberg (Greenberg) appeals from a summary judgment vacating the prior heirship order declaring her to be her brother Michael L. Olenick's (decedent's) sole heir, and naming Korin Matthew Olenick (Korin) as his sole heir at law instead. The issues presented on review are whether (1) the circuit court's refusal to compel decedent's cohabitant, Elizabeth Krusinga (Krusinga), and Korin, her son, to submit to blood tests was reversible error; and (2) an issue of fact existed as to the biological relationship between decedent and Korin, precluding entry of summary judgment.

On February 28, 1989, decedent died intestate at the age of 43. Pursuant to her petition for letters of administration, Greenberg was named administrator of his estate. Greenberg's affidavit of heirship stated that decedent died leaving no surviving spouse or surviving natural or adopted descendants, and that she was decedent's sole surviving heir at law. Decedent's estate consisted of approximately $25,000 of personal property, and $100,000 of real property, which included a house in Lincolnwood, Illinois. On March 1, 1989, the circuit court entered an order declaring Greenberg the sole heir of decedent.

On March 15, 1989, Krusinga moved to vacate the heirship finding and for a new finding of heirship, claiming that her son Korin was decedent's sole surviving heir at law. Krusinga also filed a petition to declare heirship, which represented the following: she began living with decedent in 1982; on the date of his death, she was living with him at the Lincolnwood home; during their cohabitation, Korin was born to her and decedent on January 17, 1988, in Michigan; since Korin's birth, they all lived as a "family unit," and continued to do so until decedent's death; and decedent acknowledged Korin as his natural son. Krusinga attached to the petition the following exhibits: an affidavit of parentage, signed by her and decedent and filed in a Michigan probate court, wherein each acknowledged natural parentage of Korin; a hospital birth record naming decedent as Korin's father; Korin's State of Michigan birth certificate naming decedent as father; and a copy of decedent's obituary, naming him as the "loving father of Korin."

Greenberg, as administrator, filed a petition requesting that the court compel Krusinga and Korin to submit blood samples for genetic testing to determine paternity. The petition, denied by the court, also suggested decedent was medically tested in 1973 and again in 1988, and found incapable of fathering a child.

Krusinga's motion for summary judgment was based on her sworn heirship petition and claimed that decedent's acknowledgment of paternity eliminated all questions of fact as to whether Korin was his sole heir at law under either Michigan or Illinois law. Krusinga attached three additional affidavits in which each affiant swore that decedent acknowledged and referred to Korin as his "son."

Greenberg responded to the motion as administrator and submitted the affidavits of Dr. Israel Berger and Richard Padnos, as well as her own. Dr. Berger, a urologist, averred that his analysis of decedent's semen in June of 1987 revealed that decedent's semen motility was 0%, making conception of an ovum impossible; decedent's previous history and the 1987 test demonstrated a long-standing, chronic infertility; it was medically impossible for decedent to father a child in June of 1987;

and it was very unlikely and highly improbable that he could have fathered any child born in January of 1988. Padnos, a family friend, asserted decedent knew he could not father a child, but "needed someone to come home to" and acknowledged Korin as his son so that he would have a family of his own. Greenberg stated that decedent and his former wife had been unable to conceive, and he "wanted desparately [*sic*] to be a father and have a family of his own and [that] this was undoubtedly his only opportunity to do so." According to Greenberg, decedent put his name on Korin's birth certificate because Krusinga agreed to let him name the child after his parents and so that the hospital bills would be covered by his insurance. Based on these affidavits, Greenberg suggested an issue of fact existed as to decedent's biological relationship to Korin.

In reply, Krusinga reiterated her position that decedent's acknowledgment of paternity was dispositive of the issue since neither Illinois nor Michigan law required proof that a deceased was the biological father before inheritance laws apply. Kursinga attached to the reply decedent's application for insurance showing Korin as his "son" and beneficiary.

The circuit court, after argument, granted Krusinga's motion for summary judgment, finding as a matter of law that decedent died leaving Korin, his son, as his sole survivor and heir at law. The court vacated its prior order of heirship and entered an amended order naming Korin as decedent's heir. From this judgment, and the previous order denying her motion to compel the blood tests, Greenberg appeals.

## I

Greenberg claims first that the circuit court erred, as a matter of law, by refusing to compel Krusinga and Korin to submit to blood tests. She reasons that a biological relationship between an illegitimate child and a putative father is a foundational concern when determining heirship, and concludes that denial of discovery into such a relationship constituted prejudicial, reversible error.

■ The descent and distribution of intestate estates to illegitimate persons is governed by section 2—2(h) of the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110½, par. 2—2(h)) (section 2—2(h)), which provides, in relevant part:

> "*If a decedent has acknowledged paternity of an illegitimate person* or if during his lifetime or after his death a decedent has been adjudged to be the father of an illegitimate person, *that person is heir of his father* \*\*\* and of any person from whom his father might have inherited, if living \*\*\*. *If during his lifetime the dece-*

*dent was adjudged to be the father of an illegitimate person by a court of competent jurisdiction, an authenticated copy of the judgment is sufficient proof of the paternity; but in all other cases paternity must be proved by clear and convincing evidence.* A person who was illegitimate whose parents intermarry and who is acknowledged by the father as the father's child is legitimate." (Emphasis added.)

■■■ A motion to compel blood tests, considered part of the discovery process when paternity is at issue under section 2—2(h), is regulated by Supreme Court Rule 215 (107 Ill. 2d R. 215; *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 16, 398 N.E.2d 198) and invokes the circuit court's broad discretion in its ruling. A court of review will not interfere absent an abuse of that discretion. (*In re Estate of Ragen*, 79 Ill. App. 3d at 16.) Section 2—2(h) does not mandate discovery into the biological relationship between a decedent and his alleged illegitimate heir. A statutory interpretation to that effect, as suggested by Greenberg, would divest the circuit court of its discretion in deciding whether to order blood tests.[1]

■ In the instant case, the circuit court did not abuse its discretion by refusing to compel blood tests. In support of the petition to declare heirship and her corresponding motion for summary judgment, all before the court at the time of Greenberg's motion, Krusinga attached the documents first described in the third paragraph of this opinion. Greenberg's petition to compel blood tests simply asserted decedent was medically incapable of fathering a child; at that time, her petition was unsupported by affidavit or other evidence substantiating that allegation.[2] In light of the information then before it, the circuit court did not abuse its discretion in refusing to order blood tests.

---

[1]Greenberg, analogizing to section 11 of the Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2511), governing blood tests, suggests that the circuit court's discretion has been taken away by the legislature whenever parentage is at issue and a party requests a blood test. She argues that after a request, the court has no discretion and must order the mother, child, and alleged father to submit to appropriate tests. Nothing in the Probate Act makes the blood test provisions of the Parentage Act applicable to section 2—2(h). Even if deemed applicable, these provisions could result in a conflict between the statute and Rule 215 in which, on a procedural matter such as this, the supreme court rule would control. *People ex rel. De Vos v. Laurin* (1979), 73 Ill. App. 3d 219, 223-24, 391 N.E.2d 164; *Zavaleta v. Zaveleta* (1976), 43 Ill. App. 3d 1017, 1021, 358 N.E.2d 13.

[2]The affidavit of Dr. Berger, which detailed decedent's long-standing, chronic infertility, was attached to Greenberg's response to Krusinga's motion for summary judgment. The response was filed May 23, 1989, 20 days after the circuit court order denying Greenberg's motion to compel blood tests.

■ In a paternity case, although the blood type of the mother and child usually is of considerable importance (*In re Estate of Ragen*, 79 Ill. App. 3d at 16; *Zavaleta v. Zavaleta* (1976), 43 Ill. App. 3d 1017, 1021, 358 N.E.2d 13), blood test results are not conclusive proof. (See *In re Estate of Lukas* (1987), 155 Ill. App. 3d 512, 525, 508 N.E.2d 368, *appeal denied* (1987), 116 Ill. 2d 555.) Our affirmance of the circuit court's denial of the blood test motion does not suggest that biological evidence is irrelevant, but recognizes the discretion vested in the circuit court and the information before it when Greenberg filed the petition. In order to find paternity at issue at this stage of the proceedings, the circuit court would have had to subordinate clear evidence of decedent's paternity to Greenberg's mere allegation of infertility. The denial of Greenberg's motion must be affirmed.

## II

Greenberg next contends an issue of fact existed as to the biological relationship between decedent and Korin, which precluded entry of summary judgment.

■ Summary judgment is a procedure available only where there is no genuine, triable issue of material fact; if the pleadings, affidavits, depositions or admissions show that such an issue exists, or reasonable persons may disagree upon inferences fairly drawn from uncontroverted facts, the motion must be denied and the resolution of such facts and inferences is to be made by the fact finder at trial, not by the court considering the motion. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552; *Jackson Jordon, Inc. v. Leydig, Voit & Mayer* (1990), 199 Ill. App. 3d 728, 735, 557 N.E.2d 525; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697.) The same rules of construction apply, whether paternity or other issues are involved in the motion for summary judgment, as observed in *In re Paternity of Smith* (1989), 179 Ill. App. 3d 473, 476-77, 534 N.E.2d 669:

> "Summary judgment is a drastic remedy (*Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 627, 404 N.E.2d 869, 872), and the party's right to summary judgment must be clear and free from doubt (*Cimino v. Dill* (1980), 92 Ill. App. 3d 345, 348, 415 N.E.2d 1272, 1274-75). 'Summary judgment is recognized as a salutary procedure in the administration of justice [citation], but must be cautiously granted so that the respondent's right to trial is not usurped in the presence of material evidentiary conflicting facts and inferences. The function of the procedure

is to determine the existence or absence of triable issues of fact, not to try them.' *(Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271, 1274.) In ruling upon a motion for summary judgment, the trial court has a duty to consider the entire record to determine whether a genuine issue of material fact exists. *Hoel v. Crum & Forster Insurance Co.* (1977), 51 Ill. App. 3d 624, 632, 366 N.E.2d 901, 907."

As will presently appear, summary judgment was improvidently granted in the instant case, which must be reversed and the cause remanded for trial.

■■ ■ In Illinois, a legitimate child is presumed to be the natural, biological child of the husband of his mother at the time of his birth or conception. (Ill. Rev. Stat. 1989, ch. 40, par. 2505.) The marriage certificate of his mother and father underpins this biological relationship, and this presumption causes a child of that marriage to be considered a descendant for purposes of section 2—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110½, par. 2—1). Notwithstanding this presumption of natural parenthood, asserted fatherhood by the mother's husband is made rebuttable by clear and convincing evidence under section 5 of the Parentage Act of 1984. (Ill. Rev. Stat. 1989, ch. 40, par. 2505(b).) Section 11 of the act sets forth guidelines for production of evidence relating to that issue. (Ill. Rev. Stat. 1989, ch. 40, par. 2511), and where evidence is adduced supporting a finding excluding paternity, the presumption of parentage is rebutted. *In re Marriage of Tzoumas* (1989), 187 Ill. App. 3d 723, 732, 543 N.E.2d 1093.

In the present case, the acknowledgement of parentage by decedent and supporting evidence seek to include, rather than exclude, decedent as Korin's father. Does the fact that the affirmative of the issue is being controverted lend any greater force to the requisite clear and convincing evidence than the negative? No authority has been cited or found suggesting that such is the case.

■■ ■ The first question to be answered, then, is whether an acknowledgment of parentage under section 2—2(h) is *conclusive* evidence of paternity and, when properly executed, is irrebuttable as a matter of law, the position Krusinga takes and the circuit court upheld. If so, summary judgment was properly entered. If the acknowledgment is subject to the clear and convincing standard of proof, however, rather than standing as conclusive proof of parentage, it is then subject to rebutting evidence. Section 2—2(h) itself, set forth in part I of this opinion, provides no express direction that the acknowledgment is to be deemed irrebuttable and there is no reason to so in-

terpret the statute for two reasons: (1) section 2—2(h) appears to require application of the standard of clear and convincing evidence, which is subject to rebuttal, in cases other than court adjudications (see *In re Estate of Hutchins* (1984), 120 Ill. App. 3d 1084, 1089, 458 N.E.2d 1356); and (2) the legislature could have included the parental acknowledgment, along with the "authenticated copy of the judgment," where "a decedent has been adjudged to be the father of an illegitimate person," as "sufficient proof of the paternity" had it so desired, but did not do so. (See *In re Estate of Orzoff* (1983), 116 Ill. App. 3d 265, 452 N.E.2d 82.) Accordingly, we hold that although an appropriately authenticated acknowledgment of parentage constitutes clear and convincing evidence of paternity, where, as in the instant case, material countervailing evidence is submitted, all the evidence must be weighed by the trier of fact to determine whether, at the conclusion of the trial, the acknowledgment still stands as "proof which leaves no reasonable doubt in the mind of the trier of fact." (*In re Estate of Hutchins*, 120 Ill. App. 3d at 1087.) The state of the record in this case demonstrates the existence of a genuine, triable material issue of fact which required resolution by trial, and the entry of summary judgment must be reversed. See *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31, 476 N.E.2d 413.

Analogous situations in other cases support the foregoing conclusion. In *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 398 N.E.2d 198, an alleged father acknowledged paternity in writing. The circuit court found that those documents established paternity by a preponderance of the evidence. The appellate court reversed on the ground that the wrong standard of evidence had been applied, but refused to reevaluate the evidence under Supreme Court Rule 366 (107 Ill. 2d R. 366) to see whether it met the higher "clear and convincing" standard. Had written acknowledgment of paternity been as dispositive as Krusinga contends and as held by the circuit court in the case *sub judice*, no remand would have been necessary, since the appellate court could have entered any judgment that should have been given. (107 Ill. 2d R. 366(a)(5).) In *Kennedy v. Kennedy* (1981), 93 Ill. App. 3d 88, 416 N.E.2d 1188, the appellate court specifically refused to rule on the very issue presented here—whether a written acknowledgment of paternity is itself conclusive proof of paternity—on the ground that the acknowledgment plus other uncontradicted evidence that had been presented to the circuit court was sufficient to sustain a finding of paternity, thereby implicitly holding that other evidence is admissible. Summary judgment, therefore, would have been inappropriate. In *In*

*re Adoption of Weller* (1977), 47 Ill. App. 3d 492, 362 N.E.2d 73, a divorced husband, named in the judgment of dissolution as the father of the children born during the marriage and who was then paying child support and enjoying visitation, had no standing to refuse consent to the adoption of the child by the ex-wife's new husband because she presented sufficient proof demonstrating that he could not have possessed any biological relationship to the child. In *In re Adoption of Weller*, even the dissolution judgment, affirming the husband's paternity, was not accorded the power that the court in the present case has granted to the parentage affidavit, and that court properly refused to perpetuate the fraud that the ex-husband was the child's father. See also *People ex rel. Walsh v. Kilbride* (1974), 16 Ill. App. 3d 820, 306 N.E.2d 879 (in which an admission of paternity in writing and under oath was held to be of great weight, but not conclusive of the issue).

▆ Krusinga seeks to justify the entry of summary judgment here by claiming that Illinois must grant full faith and credit (U.S. Const., art. IV, §1) to the Michigan affidavit of parentage, which in turn satisfies all statutory requirements for Korin to inherit. "Full faith and credit," however, cannot defeat Illinois' right to control ownership of real estate within Illinois. Further, the affidavit was not the result of "court action" in a sister State; the notarized document was merely recorded in the Michigan county probate judges's office and no court action was required. Finally, the Supreme Court's words in *Trimble v. Gordon* (1977), 430 U.S. 762, 772, n.14, 52 L. Ed. 2d 31, 41 n.14, 97 S. Ct. 1459, 1466 n.14, upon which Krusinga also relies, merely explain what forms of proof would not compromise a State's interest, *i.e.*, a prior adjudication or formal acknowledgment of paternity, and are simply examples of forms of proof that *could* meet equal protection standards if a State so chose.

To be further noted is the fact that the very language of the Michigan affidavit of parentage and other documents, and statements based upon it does not confer upon Korin a right to inherit should it be shown that there is no possibility of a biological relationship. Statutorily designated by the Michigan legislature as sufficient "[f]or all purposes of intestate succession" (Mich. Comp. Laws §700.111(1) (1989)), the official Michigan affidavit form begins by stating, "We affirm that we are the *natural* parents of _____ ***." (Emphasis added.) "Natural parents" means biological, or blood, as contrasted with adoptive. (See *In re Estate of Cregar* (1975), 30 Ill. App. 3d 798, 333 N.E.2d 540.) The affidavit of parentage has no legal effect unless it contains true affirmations; otherwise, the affiants are perpetrating

a fraud on the court. (*In re Adoption of Weller*, 47 Ill. App. 3d at 496.) If decedent's repeated oral acknowledgments of paternity were in fact lies, they cannot act to confer any legal rights on Korin should evidence of decedent's sperm motility of 0% persuade the fact finder that he could not have been the natural parent of Korin.

■■ Evidence that a biological relationship could not possibly exist between decedent and Korin would refute all acknowledgments and court orders, and decedent could not be regarded in law as Korin's natural parent. (*In re Adoption of Weller*, 47 Ill. App. 3d 492.) The Illinois statute does not eliminate biological parenthood as the sole basis for the intestate succession of illegitimates; what it does is allow a court to accept secondary evidence of that relationship, particularly acknowledgments, until other evidence shows the acknowledgments to be untrue. In such a case, no court has the power to declare an illegitimate child heir to a man who could not possibly have been the child's natural father. Whatever his motives, decedent's desire to acknowledge his parenthood of Korin cannot serve to legitimize Korin without his having married Krusinga (see Ill. Rev. Stat. 1989, ch. 110½, par. 2—2(h)), nor could it serve as a "backdoor" adoption (see Ill. Rev. Stat. 1989, ch. 40, par. 1501 *et seq.*), nor could it substitute for a will (see Ill. Rev. Stat. 1989, ch. 110½, par. 4—1 *et. seq.*). It also cannot be held to establish paternity as a matter of law for purposes of intestate succession, where proof of natural fatherhood has been rebutted effectively by evidence demonstrating an impossibility thereof.

Since this cause must be reversed and remanded, in consideration of the fact that the evidence of motility was not submitted until after the circuit court denied the request for a blood test, in the event that request is renewed, it should be reconsidered together with any other discovery as may be sought by parties. See *In re Estate of Ragen*, 79 Ill. App. 3d at 16.

For the aforesaid reasons, the judgment of the circuit court is affirmed in part, reversed in part and the cause is remanded for trial with directions.

Affirmed in part; reversed in part and remanded with directions.

DiVITO, P.J., and SCARIANO, J., concur.