In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1063

MINNESOTA LIFE INSURANCE COMPANY,

*Plaintiff,*

*v.*

QUINCY JONES,

*Defendant-Appellee,*

*v.*

ANGELA ASHFORD,

*Intervening Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 1470 — **Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 23, 2014 — DECIDED NOVEMBER 5, 2014

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* In 2011 a man named Lenord Jones, a hospital orderly, was murdered in Harvey, Illinois. The murder has not been solved, and the police say that they are continuing to investigate.

Jones, who left no will, owned a life insurance policy that his employer had obtained for him from Minnesota Life Insurance Company. He did not designate a beneficiary, but the policy provided that the proceeds, which at his death amounted to nearly $307,000, would go first to a surviving spouse (there was none—Lenord had never married), second to any surviving child or children, third to any surviving parents, and fourth to Lenord's estate.

An Illinois resident named Quincy Jones, claiming to be Lenord Jones's son (for the sake of brevity we'll call Lenord Jones "Lenord" and Quincy Jones "Quincy") submitted a claim to the insurance company—as did another Illinois resident, Annie Moore, claiming to be Lenord's daughter. The insurance company, being a nonresident of Illinois, was able to and did file an interpleader action in the federal court in Chicago. Fed. R. Civ. P. 22. After paying $24,000 for funeral expenses and $137,000 to Quincy, the insurance company deposited the remaining proceeds of the policy in the court, and having done so was dismissed from the case. Apparently—though not discussed by the parties or the district court—the $137,000 was an initial payment to the person whom the insurer assumed to be entitled to the entire proceeds minus funeral expenses.

Angela Ashford, Lenord's biological sister, also claimed entitlement to the proceeds of the insurance policy, as she was Lenord's only known blood relative if Quincy and Annie were (as Angela claimed) not Lenord's children. For in that event, since Lenord had left no will, Angela would be the sole beneficiaries of his estate. And so she was allowed to intervene in the district court action, where she contended that Lenord had been homosexual, had never had children

but had pretended to in order to conceal his homosexuality, and had actually told her that neither Quincy nor Annie was his biological child. (Neither claims to have been an adopted child of his.) Angela claimed that she therefore is entitled to the life insurance proceeds, and maybe more, as we don't know what other assets are in Lenord's estate.

As an additional basis for her claim Angela attached an affidavit from a man who professed to have known Lenord and known him to be homosexual—indeed to have seen him engage in homosexual acts. Angela submitted copies of Lenord's income tax returns showing that he had claimed various children as his dependents, sometimes omitting Quincy. On appeal she added that Quincy had placed in evidence neither his birth certificate nor any affidavit or other evidence from his mother concerning his paternal parentage. Angela noted further that Lenord hadn't designated Quincy as a beneficiary of the life insurance policy, though this is consistent with Lenord's having known that Quincy was his only child and would therefore automatically receive the proceeds of the policy.

Annie voluntarily took a DNA test, flunked it (that is, the result of the test established that she wasn't Lenord's daughter), and therefore abandoned her claim to the insurance proceeds, leaving only Angela to contest Quincy's claim. Before giving up, Annie had filed (and Angela had joined) a motion that Quincy be ordered to take a DNA test. The district judge denied the motion, mainly on the ground that Angela admitted that Lenord had held Quincy out as his biological son and had signed an order of parentage in 1996 acknowledging Quincy (who was then six and a half years old) as his son. The judge went on to award the insurance

proceeds that the insurance company had deposited in the district court to Quincy, precipitating this appeal by Angela, who contends that the judge erred in refusing to order Quincy to take the DNA test.

Rule 35(a) of the Federal Rules of Civil Procedure authorizes a district court to order, upon a showing of good cause, a physical examination of a litigant whose physical condition is at issue in the litigation. A DNA test for paternity is quick, noninvasive, painless—and conclusive. Given the conflicting evidence of Lenord's parentage of Quincy, ordering Quincy to submit to a DNA test would seem a no-brainer.

Not so fast. The Illinois Parentage Act creates a presumption that a man is the natural father of a child if, so far as bears on this case, he and the child's biological mother have signed an acknowledgment of paternity or, equivalently, of parentage. 750 ILCS 45/5(a)(3), (4). Both Lenord and Quincy's mother had signed the 1996 acknowledgment of Lenord's paternity.

The presumption is applicable to any civil action, whether or not brought under the Parentage Act, in which "parentage is at issue." 750 ILCS 45/9(a). So it's applicable to the present case, which in effect is an *in rem* suit over entitlement to insurance proceeds (the *res*). The Act declares the presumption (with irrelevant exceptions) irrebuttable, 750 ILCS 45/5(b), but that can't be taken seriously in all cases. It would open the door to fraud, as two people could claim parentage of a child who was not their biological child— maybe it was a child they'd stolen from its parents. And so the Illinois courts, taking liberties with the statutory language, limit the presumption's conclusiveness to "preclud[ing the signers of the parentage order] from subse-

quently disputing their parent-child relationship with the child." *In re Paternity of an Unknown Minor*, 951 N.E.2d 1220, 1224 (Ill. App. 2011); see also *In re Estate of Olenick*, 562 N.E.2d 293 (Ill. App. 1990).

Yet the presumption could well be deemed conclusive in a case such as this. Lenord could have named anyone he pleased as the beneficiary of his insurance policy. Designating Quincy as the beneficiary would have been one way to do it; declaring Quincy his son in the parentage order was another, given that the policy gives children priority in the distribution of its proceeds. Since Angela, the sister, couldn't have contested a beneficiary designation in the insurance policy itself, she shouldn't be able to contest the parentage order.

It makes sense in other words to deem the presumption irrebuttable when the putative parent has full control over who inherits and relies on the presumption to direct assets to a particular person, in this case Quincy. Obviously Lenord wanted Quincy to inherit and he had every right to direct the proceeds of the insurance policy to him. Had he adopted Quincy there would be no doubt that Quincy was entitled to the proceeds. But armed with the order of parentage Lenord had no need to adopt, just as he had no need to make a will or designate a beneficiary of his insurance policy. What is beyond doubt is that he had evinced no intent to leave money to his sister.

The parties ignore a recent opinion by the Supreme Court of Illinois which makes clear that siblings, therefore including Angela Ashford, cannot bring an action under the Parentage Act to challenge a parentage order. *In re N.C.*, 12 N.E.3d 23, 36–37 (Ill. 2014). The court noted that the Act

"narrowly authorizes a disestablishment action [that is, an action to prove that a person designated in the parentage order as the father is not the biological father] … to be filed by the child, the mother, or a man presumed to be the father by reason of marriage. 750 ILCS 45/7(b)." Angela is none of these. And though this is not formally a suit under that Act, Angela's claim as intervenor is the practical equivalent and should be treated the same way. The only reason it isn't a separate suit is that the insurance company deposited most of the proceeds of Lenord's life insurance policy in the district court. Had the company held on to the proceeds or paid all of them to Quincy, Angela would have had to file a disestablishment action, but would have been barred from doing so by the supreme court's strict interpretation of standing to bring such an action.

For completeness we note that the Illinois Probate Act makes "biological parenthood … the sole basis for the intestate succession of illegitimates." *In re Estate of Olenick, supra*, 562 N.E.2d at 299. Acknowledgement of a child constitutes "clear and convincing evidence" of paternity but is not conclusive and is therefore subject to rebuttal. 755 ILCS 5/2-2(h); *In re Estate of Olenick, supra*, 562 N.E.2d at 298. The present case is not a probate matter—an action involving Lenord's estate—but a suit to enforce an insurance contract. But it is a probate case in effect, just as Angela's claim is a Parentage Act suit in effect; and so the relevant principles of the Probate Act should apply and make DNA evidence admissible to establish absence of paternity. Cf. 750 ILCS 45/7(b-5). But not when the suitor is excluded from questioning parentage, as in this case, and in any event not *automatically* admissible. *Jarke v. Mondry*, 958 N.E.2d 730, 737 (Ill. App. 2011), holds that before the court can order a DNA test in a case such as

this it must be "presented with persuasive and credible evidence that would lead the court to believe the DNA test would result in the disinheritance" of the presumptive heir.

This may seem an odd rule, given the simplicity and conclusiveness of a DNA test of paternity. But it reflects an understandable distaste for creating monetary incentives for family quarrels likely to generate painful accusations—here of homosexuality, for the parties agree that if Lenord was homosexual he didn't want it known. In effect Angela is arguing that all you need in order to require a DNA test of a relative (or anyone else) who is ahead of you in line for an inheritance is an affidavit that the relative is *not* ahead of you, because he or she is a phony heir and you're a genuine one. Notice the distasteful implication that had Quincy died after Lenord, Angela could have required Quincy's corpse to be dug up in order for a DNA test to be conducted on it to determine whether Quincy had been Lenord's biological son.

Rule 35 would have allowed the district judge to order a DNA test of Quincy, but not at the behest of Angela. And in any event, as we have emphasized, the rule would not have *required* the judge to do so, given Illinois's aversion to ordering DNA tests in family squabbles. That aversion is grounded in substantive Illinois law and therefore binds the federal courts. Nor was Angela's evidence against Lenord's paternity conclusive. Homosexual men can of course father children (Leonard Bernstein, with his three biological children by his wife, Felicia Montealegre, is a famous example); and so far as appears our Lenord may have been bisexual— or indeed 100 percent heterosexual. Angela made no effort, so far as we can tell, to obtain evidence from Quincy's

mother—a suspicious omission. In these circumstances the district judge's refusal to disinherit Quincy can't be thought an abuse of discretion even if Angela had standing (we think she did not) to seek his disinheritance. The judge's refusal led directly to the award of the insurance proceeds to Quincy. The award is therefore

AFFIRMED.