ALEXANDER MILLER *et al.*

*v.*

URIAH PENNINGTON *et al.*

*Opinion filed October 24, 1905—Rehearing denied Dec. 12, 1905.*

1. ILLEGITIMATES—*the statutes of Illinois provide two methods whereby children are rendered legitimate.* Under section 15 of the Bastardy act, where there has been a judicial finding as to the paternity of a child, the subsequent marriage of the mother and the reputed father renders the child legitimate without acknowledgment, while under section 3 of the Statute of Descent subsequent marriage of the parents and acknowledgment of the child by the father render the child legitimate.

2. SAME—*fact that child is the result of adulterous intercourse makes no difference under Illinois statute.* There being no provision in the Illinois statutes relating to illegitimates which excludes children who are the result of adulterous intercourse from the benefits of such statutes, that fact makes no difference in determining whether children have been rendered legitimate.

3. SAME—*an acknowledgment of child may be oral.* Under the Illinois statutes an oral acknowledgment by the father of his paternity of a child, coupled with the fact of his marriage to its mother, is sufficient, if clearly proven, to fix the legitimacy of the child and its right to inherit, regardless of what the purpose of the acknowledgment was or of what the father or mother might afterwards have declared.

APPEAL from the Circuit Court of Wayne county; the Hon. J. R. CREIGHTON, Judge, presiding.

ORGAN & ELLIOTT, and WILLIAM T. BONHAM, for appellants.

J. R. HOLT, GEORGE W. JOHNS, and CREIGHTON & THOMAS, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Alexander Miller and Rusaw Miller, the appellants, and their mother, Betsy Pennington, widow of Anthony Pennington, deceased, filed their bill in this case in the circuit court of Wayne county against the appellees, who were children and grandchildren of said Anthony Pennington, praying for the assignment of dower and homestead to said Betsy Pennington in the lands of which Anthony Pennington died seized, and for partition of said lands among appellants and appellees as heirs-at-law. The adult defendants answered, admitting the death of Anthony Pennington; that he was seized of the lands described in the bill, and that the complainant Betsy Pennington was his widow and entitled to dower and homestead, but denying that her children, Alexander Miller and Rusaw Miller, were children and heirs of Anthony Pennington. The minor defendants, by their guardian *ad litem,* filed a formal answer, neither admitting nor denying the allegations of the bill but calling for proof. Replications having been filed, the cause was heard and a decree was entered assigning homestead and dower to Betsy Pennington, but dismissing the bill as to the complainants Alexander Miller and Rusaw Miller. The record has been brought to this court by appeal.

The facts proved at the hearing are as follows: In the year 1864 Anthony Pennington, a farmer and stock dealer, was living with his first wife, Phœbe Pennington, and they had four children. Betsy Miller was an unmarried woman and cousin of Phœbe Pennington. Rusaw Miller and Alexander Miller, who will be hereafter termed the complainants, were born to her,—Rusaw on March 14, 1864, and Alexander on April 24, 1865,—and Anthony Pennington was their natural father. Subsequently, four more children were born

to Anthony Pennington and his said first wife. Phœbe Pennington, the first wife, having died, Anthony Pennington married Betsy Miller, the mother of the complainants, on April 2, 1902, and he lived with her as his wife until his death, on September 9, 1904. Prior to the death of his first wife he frequently denied the paternity of the children, but when he determined to marry their mother, and after the marriage, from time to time and within a short time before his death, he acknowledged to many different persons that they were his children. He told several persons that he was going to marry Betsy Miller; that they were his children and he thought he was doing right. When he went to the justice to get the license and procure his attendance at the ceremony, he told the justice he wanted him to come down and marry him; that he thought it was the right thing for him to do, and that the complainants were his children. After the marriage, at different times, he made the same statements as to the parentage of the complainants, with expressions of opinion that he had done right in marrying their mother, saying that after Phœbe died he concluded to marry Betsy, and that he did not think it any more than right that he should marry her. These acknowledgments were made to about twenty-five disinterested persons who testified in the case. There was also evidence of other witnesses, not so numerous and several of whom were relatives of his first wife's children, that Anthony Pennington denied to them that he was the father of complainants, and these denials were made both before and after he married their mother. It appears that he was somewhat addicted to the use of intoxicating liquors, and that he was more likely to refer to the subject of the paternity of the children and his marriage to their mother at times when he had been drinking to some extent, which was perhaps natural enough, but it is very clear from the evidence that at such times he was entirely capable of intelligently making the acknowledgment. He made the statements to some witnesses when he had not

been drinking and to others when he had, but he was a capable business man of considerable property, a stock buyer and farmer, and the force of his statements and acknowledgment is in nowise affected by the fact that on some occasions he had been drinking.

At the common law an illegitimate was of kin to no one and therefore was incapable of being the heir of any person, and the common law was in force in this State until changed by statute. (*Blacklaws* v. *Milne,* 82 Ill. 505.) But this State, like many others, has abrogated the common law rule by statute. The civil law, which is now recognized as more humane and just than the common law, enabled the father of an illegitimate child to make some reparation by securing to the innocent and unfortunate the rights of inheritance to which it is naturally entitled. There were several methods under the civil law by which an illegitimate child might be made legitimate, one of which was the mere marriage of the father and mother, and in some States their marriage alone, without any acknowledgment of paternity, has this effect. In others, children born out of wedlock become legitimate by the marriage of their parents and the recognition of the children by the parents as their own. In others, the subsequent marriage and recognition by the father, before or after marriage, is sufficient, and in others the acknowledgment is required by the statute to be in writing. By our statute two of these methods have been adopted as applied to different conditions. Where there has been a judicial finding of the paternity of the child, the marriage of the parents without any acknowledgment of paternity renders the child legitimate. Section 15 of the Bastardy act provides, that if the mother of any bastard child and the reputed father shall, at any time after the birth of the child, intermarry, the child shall in all respects be deemed and held legitimate. (Hurd's Stat. 1899, p. 205.) Other cases of illegitimacy are provided for by the Statute of Descent. Section 3 of that act is as follows: "An illegitimate child, whose parents have

intermarried and whose father has acknowledged him or her as his child, shall be considered legitimate." (Hurd's Stat. 1899, p. 653.) The rights of the complainants, as heirs of Anthony Pennington, are to be determined under the latter statute, and it was necessary for them to establish, by the proof, three facts: First, that Anthony Pennington and Betsy Miller were their parents; second, that their said parents intermarried; and third, that Anthony Pennington acknowledged them as his children. Each of those facts was clearly and indisputably established by the evidence, and the conditions of the statute having been fully complied with, they are thereby declared to be legitimate. The fact that the children were the result of adulterous connection makes no difference. (*Robinson* v. *Ruprecht,* 191 Ill. 424.) The civil law excluded illegitimates who were the result of adulterous connections, but the provision which existed in the civil law is not contained in our statute, and where that is the case, all illegitimates are included. *Garland* v. *Harrison,* 8 Leigh, 368; *Ives* v. *McNicoll,* 43 L. R. A. (Ohio,) 772.

The argument in support of the decree is to the effect that the acknowledgment required by the statute is a general and public one; that the father must show, by his acts, words and treatment of the child, that he regards, and desires the public to regard, it as his legitimate offspring, and that all his acts and words, taken together, must show that he intends to make the child legitimate and capable of inheriting his estate. Counsel say, that although Anthony Pennington told many persons that the complainants were his children he told others that they were not, and that, considering the whole evidence, it cannot be said that he intended they should be included among his heirs. At the time of the marriage of their mother they were grown men with families of their own, and if the argument were sound as applied to children of tender years, there could be no inference from the fact that they were not received into the family as children but lived by themselves. We do not un-

derstand, however, that we are authorized to add anything to the statute or to enlarge or restrict the meaning of its words, and the statute does not contain the conditions contended for by counsel. They cite cases from California and Iowa, and quote from the decision in the case of *In re Jessup,* 81 Cal. 408, where the acknowledgment was held not to be sufficient under the California statute. The statutes of the different States providing for the legitimation of illegitimate children are widely different, and an examination of that case shows that the statute is entirely different from our own. One provision of the California law is, that a child born before wedlock shall become legitimate by the subsequent marriage of its parents, and under that provision no acknowledgment is required. Another provision is, that an illegitimate child is the heir of any person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child. Another section provides for legitimation without the marriage of the parents, and is as follows: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed, for all purposes, legitimate from the time of its birth." That section relates only to minor children. (*In re Pico,* 52 Cal. 54.) Under those statutes neither an oral admission nor proof of paternity will constitute an illegitimate child an heir, and the section providing for an acknowledgment requires it to be public, and that the child shall be received by the father as his own with the consent of his wife, if he is married, into his family and otherwise be treated as his child. There must be a public acknowledgment and such treatment as a father would naturally give his child. (*Blythe* v. *Ayers,* 96 Cal. 532.) But there is no such provision in our statute and no requirement for a written acknowledgment, so that an oral acknowledgment, when clearly and sat-

218–15

isfactorily proved, is sufficient. So, also, the Iowa code provides that to entitle an illegitimate child to inherit from the father, the recognition of the child by the father must have been general and notorious or in writing. (*Watson* v. *Richardson,* 110 Iowa, 673.) Our statute does not require either, but is similar to the Indiana statute, which provides that if the father shall marry the mother of a bastard child and acknowledge it as his own, the child shall be regarded as legitimate. In construing that statute the Supreme Court of Indiana has held that an acknowledgment by the father removes from the child the status of illegitimacy, no matter what the purpose of the acknowledgment was or whether the father intended to make the child his heir, and that it fixes the status of the child, which cannot be changed by anything the mother or father might afterward say. The court said: "Having removed the 'bar sinister' they cannot replace it." (*Brock* v. *State,* 85 Ind. 587; *Binns* v. *Dazey,* 146 id. 536.) That seems to us to be the correct interpretation of our statute, the purpose of which is to fix the status of the child as legitimate. It seems to us that it would be an unjust and unwarranted construction of the law to say that the father of an illegitimate child, who has legitimated it by marrying its mother and acknowledged it to be his, can thereafter change its status by any subsequent declaration. All that the statute requires in respect to the acknowledgment is that the father shall own or admit the child to be his, and the fact that Anthony Pennington very frequently acknowledged these children to be his is beyond dispute or controversy. It follows that the court erred in dismissing the bill as to the complainants, who asked for a partition of the lands.

The decree is reversed and the cause is remanded to the circuit court, with directions to grant the prayer of the bill and to enter a decree for the partition of the lands therein described in accordance with the views above expressed.

*Reversed and remanded, with directions.*