(No. 27266.— ▮▮▮▮▮▮▮▮▮▮)
BEATRICE FUHRHOP *vs.* GERTRUDE AUSTIN *et al.,* Appellants.—(CHRISTINE WILSON *et al.,* Appellees.)

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 17, 1944.*

JACOB M. LASHLY, ARTHUR V. LASHLY, both of St. Louis, Mo., WILBERT F. EBERS, and J. FRED GILSTER, both of Chester, for appellants.

R. O. KENLEY, of Longview, Tex., THOMPSON, MITCHELL, THOMPSON & YOUNG, and RICHARD D. SHEWMAKER, all of St. Louis, Mo., for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

From a decree entered by the circuit court of Randolph county, Illinois, in favor of the appellees who were counterclaimants in a partition suit, the appellants, being

the plaintiff and cross defendants, bring their appeal to this court. The cause was heard upon the pleadings and a stipulation of facts.

More than ten years prior to August 5, 1912, Abner M. Wilson and Sydner E. Wilson were lawfully married and of this marriage there were born Fred Walter Wilson, Beatrice Fuhrhop, Gertrude Austin, William S. Wilson and Thomas C. Wilson. On August 5, 1912, Abner M. Wilson entered into a second marriage with Liza E. Newsom without having attended to the formality of securing a divorce from his first wife. This marriage took place in the State of Arkansas, where both Abner M. Wilson and Liza E. Newsom were domiciled, and was a ceremonial marriage performed by a justice of the peace according to the laws of Arkansas. Abner M. Wilson and Liza E. Newsom continued to live together as husband and wife domiciled in Arkansas after their marriage and, while so living together, Christine Wilson and Margaret Wilson Joyner, the appellees herein, were born unto them. The State of Arkansas was the State of their birth and domicile. Liza E. Newsom contracted her marriage to Abner M. Wilson in good faith and at the time of the birth of Christine Wilson and Margaret Wilson Joyner she did not know any fact by reason of which her marriage to Abner M. Wilson would be unlawful or void. At the time of the marriage Abner M. Wilson's first wife was living and undivorced. A statute existed in the State of Arkansas providing as follows: "The issue of all marriages deemed null in law * * * shall be deemed and considered as legitimate."

Fred Walter Wilson, one of the children of Abner M. Wilson by his first marriage, died intestate on April 25, 1942, leaving surviving him as his only heirs, his mother, Sydner Wilson, his four full brothers and sisters, Beatrice Fuhrhop, plaintiff below, the defendants, Gertrude Austin, William S. Wilson and Thomas C. Wilson, and also the

defendants and counterclaimants, Christine Wilson and Margaret Wilson Joyner, who claim to be his legitimate half sisters.

At the time of his death Fred Walter Wilson possessed a fee simple title to real estate located in Illinois which is the subject of this partition suit. Abner Wilson predeceased Fred Walter Wilson and Sydner Wilson died testate after Fred Walter Wilson on July 28, 1942, leaving surviving her the aforesaid Beatrice Fuhrhop, Gertrude Austin, William Wilson and Thomas C. Wilson, her children, as her only heirs-at-law. Under the terms of the will of Sydner E. Wilson her executor is directed to turn all her property into cash and divide same equally among her four children above mentioned.

On September 11, 1942, Beatrice Fuhrhop filed her complaint in the circuit court of Randolph county, Illinois, against her three full brothers and sisters, the administrator of the estate of Fred Walter Wilson, deceased, and the executor of the last will and testatment of Sydner E. Wilson, deceased, and also against Christine Wilson and Margaret Joyner, as defendants, setting forth therein, in addition to the facts above stated, that as a result of the death of Fred Walter Wilson, her mother, Sydner Wilson, as the sole surviving parent, became seized of a one-third interest in the Illinois real estate owned by the said Fred Walter Wilson at his death and that by the subsequent death of her mother, the said one-third interest is payable under the terms of the will to the executor for distribution to the four children, the other two-thirds of the estate being likewise subject to division equally among the said four full brothers and sisters and to the exclusion of Christine Wilson and Margaret Joyner who have or claim to have some interest in the premises, praying for a partition thereof.

To this complaint Christine Wilson and Margaret Joyner filed an answer and counterclaim, alleging that under

the laws of the State of Arkansas they were legitimate sisters of Fred Walter Wilson and entitled to share in his intestate estate. A motion to strike the answer and counterclaim was overruled by the court. On the hearing of the cause a decree of partition was entered finding among other things that under the law of the State of Arkansas Christine Wilson and Margaret Joyner became and were from the time of their birth the legitimate children of Abner M. Wilson and the legitimate sisters of Fred Walter Wilson so as to be entitled to join in an equal distribution in the estate of Fred Walter Wilson. Appellants prosecute this appeal from that decree.

The appellants contend:

1. That under the Illinois Statutes the appellees are deemed illegitimate and cannot inherit an interest in land in Illinois through their father.

2. That descent and heirship of real estate are exclusively governed by the laws of the State of the situs of the real estate and no person can take except those who are recognized as heirs by the laws of that State.

3. That the law of Arkansas has no application to the instant case since the Arkansas law is in conflict with the Illinois law on the subject and contrary to the public policy of Illinois.

4. The full-faith-and-credit clause of the constitution does not require the Illinois courts to apply the law of Arkansas where there is a conflict and the Arkansas law is contrary to the public policy of Illinois.

The appellees insist:

1. That under the law of Arkansas the appellees, at the time of their birth, were legitimate; that legitimacy depends upon the law of the domicile and since appellees are legitimate under the laws of Arkansas, they are legitimate under the laws of Illinois and are to be deemed legitimate sisters and brothers of Fred Walter Wilson.

2. That the legitimization of the appellees, under the law of Arkansas, is not against the public policy of Illinois but is consistent therewith.

3. The full-faith-and-credit clause of the constitution of the United States requires the recognition of legitimation given by the statute of Arkansas.

There is no dispute between the appellants and appellees as to the shares which each should have in the real estate in the event it is determined that the appellees are entitled to inherit from Fred Walter Wilson, deceased.

It is well settled at common law that the issue of a void marriage are illegitimate. The only statute in Illinois which undertakes to legitimatize the illegitimate issue of a void marriage was the act of June 26, 1923, (Ill. Rev. Stat. 1941, chap. 89, par. 17a,) which reads as follows:

"Whenever persons attempt or have attempted to contract and be joined in marriage, and some form of marriage ceremony recognized by law has been performed in apparent compliance with the law in relation to marriage, and, pursuant to such attempt to contract and be joined in marriage, cohabit or have cohabited together as husband and wife, and there is issue born after the taking effect of this Act as a result of such cohabitation, such issue is hereby made legitimate and may take the name of the father, though such attempted marriage is declared void or might be declared void, for any reason."

Under the stipulation of facts it is shown that both the appellees were born prior to June 26, 1923. The common law is in force in Illinois until changed by statute. *Miller* v. *Pennington,* 218 Ill. 220.

There is much discussion in the briefs of two rather recent Illinois cases, (*McNamara* v. *McNamara,* 303 Ill. 191, 135 N. E. 410, and *Peirce* v. *Peirce,* 379 Ill. 185, 39 N. E. (2d) 990,) as being decisive of the questions involved in this appeal.

The *McNamara case* was a partition suit brought by Mary Jeanette McNamara, daughter of John H. McNamara, deceased. John H. McNamara died on March 30, 1914, intestate and seized in fee simple of certain land in Illinois. He left surviving him a widow, the said Mary Jeanette McNamara and Margaret J. McNamara, his daughters, and a son named John A. McNamara, as his only heirs-at-law. The controversy arises over the share of the son, John A. McNamara, who was never legally married. He died intestate, May 10, 1916, a resident of Los Angeles county, California. He was the father of John Hamilton McNamara, otherwise known as John Hamilton Bettencorte, and Rosalie Nettie Bettencorte was the child's mother. She was married to one Antoine F. Bettencorte but separated from him in December, 1913. On October 15, 1915, they were divorced. From December 24, 1913, John A. McNamara and Rosalie Nettie Bettencorte lived together as husband and wife. John Hamilton McNamara was born on October 24, 1914. His father, John A. McNamara, received him into the family a week after his birth and at all times acknowledged John Hamilton McNamara as his own child up until the time of his death. In the administration of the estate of John A. McNamara there was considerable litigation carried on in the superior court of Los Angeles county between Mary Jeanette and Margaret J. McNamara on one side and Rosalie Nettie Bettencorte as the administratrix of the John A. McNamara estate and as guardian of John Hamilton McNamara. It was finally concluded in the Supreme Court of California, where it was held that, under the law of that State, John A. McNamara had legally adopted John Hamilton McNamara as his son and that he thereupon became a legitimate child from the time of his birth.

However, in the *McNamara case* in Illinois the same questions were raised in the partition proceeding as had been litigated in California. This court, in passing upon

the status of John Hamilton McNamara as a legitimate child of John A. McNamara, said, "The first question has been finally settled, both as one of fact and law, by the decision of the Supreme Court of California in the litigation in that State involving the status of John Hamilton McNamara, on these grounds: The litigation was between the same parties as in this controversy, and the question of the status of John Hamilton McNamara was the subject of the litigation. Where a fact is once determined the finding is conclusive as to that fact in a subsequent suit between substantially the same parties. * * * As a question of law, the decision of the highest court of California construing the law of that State is conclusive in the courts of every other State."

In the *Peirce case* a contest over the right to administer the estate of Harry Peirce, deceased, was involved. The facts of that case are fully set forth in the opinion but are briefly repeated here. Harry Peirce was legally married to Theresa Thompson in 1892. To that union one son was born, Augustus Weirich Peirce. In 1907, without being divorced, he entered into a so-called second marriage with Era Peirce in Mexico. Four children were born of the second marriage, one of whom was Richard K. Peirce. In 1915 Harry Peirce went to the State of Nevada and there instituted a suit for divorce from his first wife, Theresa. As a result of that suit a decree of divorce was awarded to Theresa. Peirce then sent for his second wife, and she, together with the four children, lived with Peirce for a time in the State of Nevada. Later they returned to Illinois and in 1939 Harry Peirce died a resident of this State. Letters of administration were issued to Richard K. Peirce by the county court of Jo Daviess county. Augustus Peirce filed a petition to have the letters revoked on the ground that Richard K. Peirce was not a legitimate child of Harry Peirce The question on appeal to this court was whether the children of the second marriage were legiti-

mate. We held in that case that Harry Peirce, after his divorce, and Era Peirce entered into a common-law marriage in the State of Nevada, and that under the marital law of that State the marriage was valid and his recognition thereafter of the children born to Era Peirce, as his own, rendered them legitimate. We further held that there was no conflict between the method recognized by Nevada law for legitimatizing children out of wedlock and that which obtained in Illinois, pointing to chapter 3, paragraph 163, Ill. Rev. Statutes, 1941, which provides "An illegitimate child whose parents intermarry and who is acknowledged by the father as the father's child shall be considered legitimate."

The *McNamara case* and the *Peirce case* differ from the present case in that Abner M. Wilson never at any time entered into a valid marriage with Liza Newsom, and never at any time owned any part of the real estate in controversy. There is definitely a conflict between the Arkansas law and the Illinois law. Section 4342, Pope's Digest of Arkansas Statutes, 1937, says that all issue of void marriages, regardless of date of birth, shall be deemed legitimate, whereas in Illinois, as to children born prior to 1923, their status of legitimacy is to be determined by the common law, which declares that all issue of a void marriage are deemed illegitimate.

This court has many times announced that the descent of real estate is governed by the law of the situs. In *Hall* v. *Gabbert*, 213 Ill. 208, this court (quoting from *United States* v. *Fox*, 94 U. S. 315,) said, "It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or in any other mode, is exclusively subject to the government within whose jurisdiction the property is situated." In *Stolz* v. *Doering*, 112 Ill. 234, quoting from Story on Conflict of Laws, we held, "The descent and heirship of real estate are exclusively

governed by the law of the country within which it is actually situated. No person can take except those who are recognized as legitimate heirs by the laws of that country." See, also, *Keegan* v. *Geraghty,* 101 Ill. 26, and *Van Matre* v. *Sankey,* 148 Ill. 536.

In commenting upon the recognition of adoption this court, in the *McNamara case,* said that it "rests both upon the doctrine of comity, which is essential to the maintenance of proper relations between the States, and article 4 of the Federal constitution, providing that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. The rule in both cases is subject to the qualifications that one State will not recognize a status contrary to its own laws or public policy and that the descent of real estate is governed by the law of the situs."

The full-faith-and-credit clause of the Federal constitution does not require the Illinois courts to apply the Arkansas law in a case determining the descent of real estate where it is in conflict with the Illinois law or the public policy of the State.

The decree of the circuit court of Randolph county was based upon the theory that the cross complainants were entitled by way of descent to share in the real estate in Illinois sought to be partitioned, as the legitimate children of Abner M. Wilson, and that the Illinois courts were required to recognize the Arkansas law and apply it to the facts in this case. In this we think the court was in error. The laws of descent were passed to facilitate the transfer of real estate in Illinois, and the rule adopted by the circuit court would tend to confusion and uncertainty.

The judgment of the circuit court of Randolph county is reversed and the cause remanded, with directions to enter a decree in harmony with the views expressed herein.

*Reversed and remanded, with directions.*