No. 1-94-3658

IN RE ESTATE OF BARBARA L. )
BARTOLINI, Deceased. )
___________________________________) Appeal from the Circuit
 ) Court of Cook County.
RUSSELL C. ENKE, )
 )
 Plaintiff-Appellant, ) 
 )
 v. )
 ) Honorable
JACQUELINE BARTOLINI, Independent ) Jeffrey A. Malak,
Administrator Of The Estate Of ) Judge Presiding.
Barbara L. Bartolini, Deceased, )
 )
 Defendant-Appellee. )

 JUSTICE GORDON delivered the opinion of the court:
 In this case, the Circuit Court of Cook County, Probate
Division, entered an order declaring heirship to the intestate
estate of Barbara L. Bartolini, wherein the decedent's maternal
relatives were determined to be her only heirs. The plaintiff,
Russell Enke, a half-brother of the decedent (the son of the
decedent's father but of a different mother), filed a petition to
amend that order, seeking to have himself and eight other
paternal relatives of the decedent named as heirs to the
decedent's estate. The trial court denied that petition, and
this appeal from that order ensued pursuant to Illinois Supreme
Court Rule 304(a) (155 Ill. 2d R. 304(a)).
 The facts are undisputed. The decedent's father, George
Enke (George), married Sarah Curry (Sarah) in 1909 in
Pennsylvania, and the two had four children between 1909 and
1914, namely, the plaintiff, his brother and his two sisters. 
George later abandoned Sarah and their four children in
Pennsylvania, and began cohabiting with Violet Stott (Violet) in
Chicago. In 1914, George and Violet had their only child, the
decedent, Barbara Bartolini, out of wedlock. In 1915, without
obtaining a divorce from Sarah, who was still alive at that time,
George entered into a bigamous marriage with Violet in Chicago. 
Both parties concede that that marriage was invalid.
 George predeceased both of his putative spouses and the
decedent when he died in Chicago in 1947. George's first wife,
Sarah, died in 1965 in Pennsylvania; the decedent's mother,
Violet, died in 1971 in Chicago; and the decedent died intestate
in 1992 in Chicago. The decedent's sole survivors on the side of
her mother, Violet, were her cousins, Vernon Church and Dorothy
James. Bartolini's sole survivors on her father's side were the
progeny of her father and his first wife, Sarah. These included
the plaintiff, Russell Enke, who was the decedent's half-brother;
his sister, Martha; the three children of his sister Dorothy; and
the four grandchildren of his brother James.
 In its order declaring heirship, the trial court named the
decedent's maternal cousins, Vernon Church and Dorothy James, as
the sole heirs to the decedent's intestate estate. This order is
consistent with section 2-2 of the Probate Act of 1975 (755 ILCS
5/2-2 (West 1994)), which provides that the intestate estates of
illegitimate children pass to their respective maternal relatives
but not to their paternal relatives. This rule is to be
contrasted with section 2-1 of the Probate Act (755 ILCS 5/2-1
(West 1994)), which provides that the intestate estates of
legitimate children pass to their respective paternal as well as
maternal relatives. In his petition to amend the trial court's
order declaring heirship, plaintiff urged that when the decedent
died, she was the legitimate child of George and Violet by virtue
of their albeit bigamous marriage ceremony which took place while
George was still married to his first wife, Sarah. Therefore,
plaintiff urged, because the decedent was legitimate when she
died, her aforementioned paternal relatives were entitled to
participate in the distribution of her estate.
 In support of his petition to amend the order declaring
heirship, plaintiff relied upon the legitimating statutes enacted
under section 2-2(h) of the Probate Act (755 ILCS 5/2-2(h) (West
1994)), and under sections 212(c) and 303 of the Illinois
Marriage and Dissolution of Marriage Act (hereinafter IMDMA) (750
ILCS 5/212 and 5/303 (West 1994)). Section 2-2(h) of the Probate
Act provides, inter alia, that
 "[a] person who was illegitimate whose parents
 intermarry and who is acknowledged by the father as the
 father's child is legitimate." 755 ILCS 5/2-2(h) (West
 1994).
Section 212(c) of the IMDMA, also cited by the plaintiff in his
petition to amend, provides that "[c]hildren born of or adopted
of a prohibited or common law marriage are legitimate." 750 ILCS
5/212(c) (West 1994). Like section 2-2(h) of the Probate Act and
section 212(c) of the IMDMA, section 303 of the IMDMA provides
that
 "[c]hildren born or adopted of a marriage declared
 invalid are legitimate. Children whose parents marry
 after their birth are legitimate." 750 ILCS 5/303
 (West 1994).
On the basis of the foregoing provisions, the plaintiff argued
that the decedent died as a legitimate child by virtue of the
bigamous marriage of her parents which took place after her
birth, and that therefore, her paternal relatives were entitled
to participate with the maternal relatives in the distribution of
her intestate estate.
 The independent administrator of the decedent's estate,
Jacqueline Bartolini (hereinafter referred to as the defendant),
filed a response to the plaintiff's petition to amend the trial
court's order declaring heirship. In her response, the defendant
argued that the statutory sections cited by the plaintiff were
irrelevant because the decedent was not "born of" a prohibited or
invalid marriage, as provided by sections 212(c) and 303 of the
IMDMA, but, rather, was born prior to an invalid marriage, out of
wedlock. Moreover, the defendant argued that that invalid
marriage did not legitimate the decedent under either section 303
of the IMDMA or section 2-2(h) of the Probate Act, because, she
urged, those statutory sections contemplate that only valid
marriages would legitimate a child born out of wedlock. 
Therefore, defendant urged, only the decedent's maternal heirs
were entitled to participate in the distribution of her intestate
estate.
 In its written order denying plaintiff's petition, the trial
court stated that
 "the attempted marriage between George W. Enke and
 Violet B. Stott subsequent to the birth of the Decedent
 did not legitimate the Decedent because George W. Enke
 had not been divorced from his first wife, and George
 W. Enke predeceased his first wife."
DISCUSSION:
 The parties agree that the sole issue on appeal is whether a
child born out of wedlock, whose parents subsequently enter into
an invalid marriage, is thereby legitimated for the purpose of
determining heirship. Plaintiff contends that sections 212(c)
and 303 of the IMDMA, when read together, must lead us to the
conclusion that an invalid marriage operates to legitimate a
child born out of wedlock. Plaintiff further argues that
Illinois public policy favors this interpretation and the
legitimation which it fosters. Although there are no Illinois
decisions explicitly on point, plaintiff also contends that there
is persuasive authority from other states whose courts have
interpreted statutes essentially identical to sections 212(c) and
303 of the IMDMA under similar circumstances in favor of
legitimacy. For the reasons which follow, we agree with the
plaintiff's position.
 Since the enactment of the modern legitimating statutes (755
ILCS 5/2-2(h), 750 ILCS 5/212 and 5/303 (West 1994)), neither the
Illinois courts nor the legislature has directly addressed the
question of whether invalid marriages will serve to legitimate
children born out of wedlock. As noted, the legitimating
statutes themselves merely provide that a child born of an
invalid marriage is legitimate (750 ILCS 5/212(c) and 5/303 (West
1994)), and that a child born out of wedlock becomes legitimate
when his parents marry each other (750 ILCS 5/303 and 755 ILCS
5/2-2(h) (West 1994)). However, these statutes do not address
whether an invalid marriage will suffice to legitimate a child
born out of wedlock. In other words, whether the terms "marry"
or "intermarry" as used in these legitimating statutes encompass
invalid marriages remains undefined.
 Accordingly, the Illinois decisions in Miller v. Pennington,
218 Ill. 220, 75 N.E. 919 (1905) and Peirce v. Peirce, 379 Ill.
185, 39 N.E.2d 990 (1942), which the plaintiff has cited, are not
helpful, since each of those cases involved children born out of
wedlock who were legitimated through a subsequent valid marriage
by their parents. In each of those cases, the provisions in the
legitimating statutes providing for the legitimation of children
born out of wedlock were properly invoked. However, in each of
those cases, there was a legally valid subsequent intermarriage. 
Unlike here, those cases did not address whether a subsequent
invalid marriage would legitimate a child under section 303 of
the IMDMA (750 ILCS 5/303 (West 1994)) and section 2-2(h) of the
Probate Act. 755 ILCS 5/2-2(h) (West 1994).
 Correspondingly, the Illinois decisions in Krupp v.
Sackwitz, 30 Ill. App. 2d 450, 174 N.E.2d 877 (1961), In re
Estate of Karas, 21 Ill. App. 3d 564, 315 N.E.2d 603 (1974) and
Dotson v. Sears, Roebuck & Co., 157 Ill. App. 3d 1036, 510 N.E.2d
1208 (1987), which the defendant has cited, are similarly non-
edifying. Both Krupp and Estate of Karas involved children born
out of wedlock whose attempt to inherit from their father was
rejected. However, both Krupp and Estate of Karas involved
circumstances in which no subsequent marriage took place between
the parents of the children born out of wedlock, much less an
invalid marriage. Similarly, in Dotson, where the court rejected
the claim by the father of a child born out of wedlock seeking to
inherit from that child, the child was never legitimated since,
as in Krupp and Estate of Karas, there was no subsequent
intermarriage as required by statute.
 Defendant also purports to cite to the Illinois decisions in
Sparling v. Industrial Comm'n, 48 Ill. 2d 332, 270 N.E.2d 411
(1971); Jardine v. Jardine, 291 Ill. App. 152, 9 N.E.2d 645
(1937); Whyte v. Estate of Whyte, 244 Ill. App. 3d 746, 614
N.E.2d 372 (1993); and Fuhrhop v. Austin, 385 Ill. 149, 52 N.E.2d
267 (1943). However, none of these cases addresses the issue in
the instant case of whether an invalid marriage will legitimate a
child born out of wedlock, and consequently, they are irrelevant
to our disposition. The decision in Sparling did not involve
illegitimacy, but, rather, the right of a woman to inherit from
her deceased, putative husband, to whom she was bigamously and,
consequently, invalidly married. Similarly, the Jardine case did
not involve illegitimacy but, rather, the contested annulment of
a bigamous marriage, in which the court, after finding that the
marriage was indeed bigamous, stated that such a marriage is good
"for no legal purpose." Jardine, 291 Ill. App. 152, 9 N.E.2d at
649. Likewise in Whyte, the court did not address the question
of legitimacy but, rather, the validity of a bigamous marriage
after its impediments were removed. Lastly, in Fuhrhop, although
the question of legitimacy was before the court, that case did
not involve any issue of whether children were legitimated by a
subsequent marriage of any nature, but, rather, simply stated
that under the common law, children born of an invalid marriage
are considered to be illegitimate in the absence of any
legislative remediation of that rule.
 Both parties cite to the Illinois Supreme Court case of
Robinson v. Ruprecht, 191 Ill. 424, 61 N.E. 631 (1901) in support
of their respective positions. In Robinson, the court
considered, inter alia, whether children born out of wedlock were
subsequently legitimated by the bigamous marriage of their
parents when the prior spouses of their parents later died. In
construing a preexisting Illinois statute which provided that
children born out of wedlock could be legitimated by the
intermarriage of their parents (Ill. Rev. Stat., ch. 39, sec. 3
(Hurd's Stat. 1899)), the Robinson court held that once the
impediments to the invalid marriage were removed, the marriage
became valid and the children, legitimate. 
 In the instant case, the plaintiff cites to Robinson to show
that even a subsequent invalid marriage may legitimate children
born out of wedlock. In contrast, defendant cites to Robinson in
support of her contention that only where the impediments of a
subsequent invalid marriage are removed will children born out of
wedlock become legitimate. However, Robinson is not fully in
point, because that case was decided prior to the 1925 enactment
of the rule in Illinois that children of an invalid marriage are
deemed to be legitimate without requiring the further removal of
any impediments (Ill. Rev. Stat. 1925, ch. 89, par. 18) now at
750 ILCS 5/212(c) and 5/303 (West 1994)). It is the impact of
those later statutory enactments which we now must examine with
respect to the scope of the terms "marry" and "intermarry" as
deployed in those provisions.
 However, while Robinson does not address the interplay of
the relevant statutes presently enacted and in effect, it is
helpful in providing a framework pursuant to which the modern
legitimation statutes should be interpreted. In that regard, the
Robinson court recognized the value of the legitimation statute
there at issue in relieving otherwise illegitimate children of
the harsh common law rule that they were kin of no one and could
not, therefore, inherit from anyone or pass their intestate
estates to anyone but their blood relatives. The court
criticized the common law rule, stating as follows:
 "The rule visited the sins of the parents upon the
 unoffending offspring, and could not long survive the
 truer sense of justice and broader sense of charity
 that came with the advancing enlightenment and
 civilization of the race. [The legitimating statutes]
 were enacted for the purpose of obviating the undue
 severity of the common law and of erecting a rule more
 consonant with justice to an innocent and unfortunate
 class. *** The child of such parents [whose marriage
 was invalid at the time of their child's birth] is not
 less innocent or unoffending than the child of parents
 who were unmarried at the time of the copulation, and
 the ground upon which the insistence is based ***, 
 --that the child shall be punished for the sins of the
 parents,--shocks every sense of justice and right. The
 degree of moral or criminal delinquency of the parents does
 not enter into consideration in construing the section." 
 Robinson, 191 Ill. 424, 433, 61 N.E. 631, 634.
See also Miller, 218 Ill. 220, 223, 75 N.E. 919, 920 (stating
that legitimation statutes are "more humane and just than the
common law" insofar as they secure to the "innocent and
unfortunate" child its natural inheritance rights); Cardenas v.
Cardenas, 12 Ill. App. 2d 497, 140 N.E.2d 377 (1956) (stating
that statute legitimating children of invalid marriage and
children whose parents later marry is to be construed liberally
to effectuate its benign, benevolent, and charitable humanitarian
purposes).
 As noted, while there are no Illinois decisions which deal
specifically with the question at issue here, whether a
subsequent, invalid marriage by the parents of a child born out
of wedlock legitimates that child under the interplay of the
various statutes now in effect, there are ample cases in other
jurisdictions specifically dealing with that question. With
respect to these cases, there appears to be a split of authority
among the various states regarding the question presented here. 
See, on the one hand, Rivieccio v. Bothan, 27 Cal.2d 621, 165
P.2d 677 (1946); Bates v. Meade, 174 Ky. 545, 192 S.W. 666
(1917); Clinton County National Bank & Trust Co. v. Todhunter, 43
Ohio App. 289, 183 N.E. 88 (1931); In re Estate of Calogero, 51
N.J. 345, 240 A. 2d 429 (1968); Carroll v. Carroll, 20 Tex. 732
(1858); Goodman v. Goodman, 142 S.E. 412 (1928), which align
themselves with the plaintiff's position. See, on the other
hand, Adams v. Adams, 154 Mass. 290, 28 N.E. 260 (1891); People
ex. rel. Meredith v. Meredith, 297 N.Y. 692, 77 N.E.2d 8 (1947);
In re Moncrief's Will, 235 N.Y. 390, 139 N.E. 550 (1923);
Greenhow v. James Executor, 80 Va. 636 (1885); Popp v. Roth, 9
Utah 2d 96, 338 P.2d 123 (1959), which appear to articulate the
defendant's position.
 Upon our review of these authorities, we find that the cases
supporting plaintiff's position are more consistent with the
remedial nature of the Illinois legitimating statutes and with
the public policy which those statutes serve as articulated by
our supreme court. See Robinson, 191 Ill. 424, 61 N.E. 631. See
also Miller, 218 Ill. 220, 75 N.E. 919; Cardenas, 12 Ill. App.
2d 497, 140 N.E.2d 377.
 The cases of Bates v. Meade, 174 Ky. 545, 192 S.W. 666
(1917), and Goodman v. Goodman, 142 S.E. 412 (Va. 1928), are in
point. In Bates, two children were born prior to an invalid
marriage, and three were later born of that invalid marriage. 
Like sections 212(c) and 303 of the IMDMA, section 2098 of the
Kentucky Statutes provided that "the issue of an illegal or void
marriage shall be legitimate ***." Ky. Stat. 2098 (1917). 
Moreover, like section 303 of the IMDMA and section 2-2(h) of the
Probate Act of 1975, section 1398 of the Kentucky Statutes stated
as follows:
 "if a man having had a child by a woman shall
 afterwards marry her, such child or its descendants, if
 recognized by him before or after marriage, shall be
 deemed legitimate." Ky. Stat. 1398 (1917).
After reading sections 2098 and 1398 of the Kentucky Statutes
together, the Bates court held that the term "marry" in section
1398 encompassed both valid and invalid marriages and that
therefore, the void marriage of the parents in that case operated
to legitimate the children born prior to that marriage. For its
reasons, the Bates court stated as follows:
 "Turning now to sections 1398 and 2098, it will be seen
 that they provide for two different states of case--one
 when the child is born before the marriage takes place;
 the other when it is the offspring of a void marriage. 
 But in both sections the legislative intent was the
 same--to save the children from illegitimacy if a
 marriage was solemnized between the parties ***. If,
 then, it be conceded, as it must be under the plain
 letter of section 2098, that the issue of a void
 marriage shall be legitimate, we perceive no sound
 reason why this legitimating principle should not be
 read into section 1398 so as to make legitimate
 children of the parties born before the marriage,
 although their marriage was prohibited by law and the
 offender against the bigamy statute guilty of a felony. 
 Bates, 192 S.W. at 671.
 In Goodman, as in Bates and the instant case, the same issue
was involved under similar remediating statutes. There, the
Virginia Supreme Court of Appeals concluded that the statutory
legitimation of a child by subsequent intermarriage "was intended
to include every marriage, valid or void, entered into in
accordance with the forms and ceremonies of the law," where the
Virginia statutes also provided that children of void marriages
were legitimate. Goodman, 142 S.E. at 413. In so holding, the
Goodman court noted that the purpose of the enactment of these
legitimating statutes was "to remove the stain and disabilities
of bastardy from all 'innocent and unoffending' children who, for
any cause, might be classed as illegitimate." Goodman, 142 S.E.
at 413. See Todhunter, 43 Ohio App. 289, 183 N.E. 88 (void
marriage legitimated child born out of wedlock under statute
essentially the same as the Illinois statutes at issue here);
Carroll, 20 Tex. 731 (void marriage legitimated child born out of
wedlock under statutes essentially the same as the Illinois
statutes at issue here). See also Rivieccio, 27 Cal.2d 621, 165
P.2d 677 (a child born out of wedlock was legitimated by the
subsequent valid marriage of his parents, although that marriage
was later declared void upon the annulment of the father's
divorce from his first wife, under statutes essentially the same
as the Illinois statutes at issue here); Calogero, 51 N.J. 345,
240 A.2d 429 (void marriage legitimated child born out of wedlock
under statutes essentially the same as the Illinois statutes at
issue here, but term "marry" read broadly because amended statute
substituted term "marry" for formerly narrower term "lawful
wedlock" used in prior statute).
 Here, too, as in each of the foregoing out-of-state
decisions, because neither "marry" nor "intermarry" is defined in
the relevant Illinois statutes (755 ILCS 5/2-2(h), 750 ILCS 5/212
and 5/303 (West 1994)), we see no sound reason to treat the issue
of an invalid marriage as legitimate under sections 212(c) and
303 of the IMDMA, and yet to treat their siblings born prior to
that same invalid marriage as illegitimates under section 303 of
the IMDMA and section 2-2(h) of the Probate Act. See Bates, 174
Ky. 545, 192 S.W. 666; Goodman, 42 S.E. 412. See also Rivieccio,
27 Cal.2d 621, 165 P.2d 677; In re Estate of Calogero, 51 N.J.
345, 240 A.2d 429; Todhunter, 43 Ohio App. 289, 183 N.E. 88;
Carroll, 20 Tex. 731. Rather, giving full reflection to the
interplay between the legitimating statutes in Illinois, which
provide specifically for the legitimation of children born out of
wedlock through subsequent marriage (750 ILCS 5/303 (West 1994)
and 755 ILCS 5/2-2(h) (West 1994)), and which provide that the
offspring of an invalid marriage are nevertheless legitimate (750
ILCS 5/212(c) and 5/303 (West 1994)), we find merit in the
position urged by the plaintiff. As noted, this position would
also more fully implement the remedial nature of these
legitimating statutes and the articulated public policy which
they serve. See Robinson, 191 Ill. 424, 61 N.E. 631. See also
Miller, 218 Ill. 220, 75 N.E. 919; Cardenas, 12 Ill. App. 2d 497,
140 N.E.2d 377.
 We also note that most of the out-of-state cases which seem
to favor the defendant's position reach their results without
providing any cogent rationale in support thereof. See, e.g.,
Adams, 154 Mass. 290, 28 N.E. 260 (holding without discussing its
rationale that under California's legitimation statutes only a
valid marriage would legitimate child born out of wedlock);
Meredith, 297 N.Y. 692, 77 N.E.2d 8 (holding without discussion
that legitimating statute like those at issue here require valid
marriage to legitimate child born out of wedlock); Popp, 9 Utah
2d 96, 338 P.2d 123 (interpreting without discussion legitimating
statutes like those at issue here to require valid marriage to
legitimate child born out of wedlock). In Greenhow, 80 Va. 636,
where Virginia's highest court refused to legitimate a child born
out of wedlock of a racially mixed couple whose subsequent
marriage violated Virginia's anti-miscegenation statute, one
cannot escape the conclusion that the underlying rationale in
that decision was predicated on the racially biased analysis
which was in currency at that time. Moreover, the case of In re
Moncrief's Will, 235 N.Y. 390, 139 N.E. 550, to which the
defendant refers, is also distinguishable. Although the court in
that case adhered to the rationale that an invalid marriage will
not legitimate children born out of wedlock, the facts in that
case involved a subsequent marriage that was ultimately
annulled.
 In any event, for the reasons already stated, even if those
out-of-state cases upon which the defendant relies were not
otherwise vulnerable, we would favor the position of those out-
of-state cases cited by the plaintiff. See Bates, 174 Ky. 545,
192 S.W. 666; Goodman, 142 S.E. 412. See also Rivieccio, 27
Cal.2d 621, 165 P.2d 677; Todhunter, 43 Ohio App. 289, 183 N.E.
88; Calogero, 51 N.J. 345, 240 A.2d 429; Carroll, 20 Tex. 731. 
Those cases better reflect the intent of our legislature as
manifest from the interplay between the various modern
legitimation statutes which are presently in force and most
consistent with their remedial purpose and the public policy
which they were enacted to implement. See Robinson, 191 Ill.
424, 61 N.E. 631. See also Miller, 218 Ill. 220, 75 N.E. 919;
Cardenas, 12 Ill. App. 2d 497, 140 N.E.2d 377.
 The defendant would further urge that by interpreting the
terms "marry" and "intermarry" to encompass invalid marriages, we
are in effect performing a legislative function. We disagree. 
The intention of the legislature is to be derived from the
manifest intent of an enactment as a whole (Whelan v. County
Officers' Electoral Board, 256 Ill. App. 3d 555, 629 N.E.2d 842
(1994)), and courts must avoid interpretations of statutory
language which are so literal or so overly broad that they fail
to give effect to the purpose which the legislature intended. In
re Petition of K.M., 274 Ill. App. 3d 189, 653 N.E.2d 888 (1995). 
As already discussed, the Illinois legitimation statutes are
remedial in nature and require liberal construction to protect
illegitimates. See Robinson, 191 Ill. 424, 61 N.E. 631. See
also Miller, 218 Ill. 220, 75 N.E. 919; Cardenas, 12 Ill. App. 2d
497, 140 N.E.2d 377. In the instant case, we are not asked to
amend or enlarge the statutes at issue, as defendant would urge,
but, rather, to implement them in a manner which would best
reflect the expressed intent of the legislature.
 For the foregoing reasons, the judgment of the Circuit Court
of Cook County is reversed.
 COUSINS, Jr. and HOURIHANE, JJ., concur.