ODESSA BRICE *et al.*, Plaintiffs-Appellants, v. THE ESTATE OF ALLEN WHITE, Deceased, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—03—0499

Opinion filed December 4, 2003.

David E. Neely, of Chicago, for appellants.

Anitra Androh, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Allen White died on September 20, 2002. Thereafter, Anthony Stewart, a first cousin once removed of the decedent, sought the issuance of letters testamentary in the probate division of the circuit court of Cook County. Letters testamentary were issued to Anthony Stewart pursuant to his affidavit of heirship indicating that Anthony Stewart, a/k/a Toni Stewart, and Jean Williams were decedent's heirs at law. Additionally, an order was entered admitting a will dated October 5, 2001, to probate, which will designated Stewart as executor and left 40% of the decedent's estate to Stewart and 60% to Williams.

Thereafter, Della Tucker, Columbus Tucker, Theresa Brice, Sylvia Brice and Odessa Brice (plaintiffs) filed an emergency petition to contest the will and a motion to amend the order declaring heirship on the basis that they were the grandchildren of decedent. There was testimony that in 1928 Parthenia White gave birth to plaintiffs' mother, Della Mae Tucker, in Memphis, Tennessee, at a time when she was unmarried. There was further testimony that Allen White and Parthenia lived in a family relationship in Memphis, Tennessee, until 1940 when they moved to Illinois. Thereafter, in 1950, Allen and Parthenia intermarried and continued to live in a family relationship with Della Mae until her death. Della Mae Tucker died in 1969 survived by her children, the plaintiffs in this cause.

■ Section 2—2(h) of the Probate Act of 1975 provides "[a] person who was illegitimate whose parents intermarry and who is acknowledged by the father as the father's child is legitimate." 755 ILCS 5/2—2(h) (West 2002).

The issue here, therefore, is whether Allen White, the decedent, acknowledged that Della Mae Tucker, plaintiffs' mother, was his daughter and whether such acknowledgment satisfied the requirements of the statute. We believe that plaintiffs have carried that burden.

Charliemae Boston, not related to any of the parties nor an interested party in this matter, testified at the hearing on plaintiffs' motion that she first met Allen White, Parthenia White, and their daughter in 1952 after they moved to Illinois. She stated that they were openly living together as a family unit. When specifically asked whether Allen White acknowledged to her that Della Mae Tucker was his daughter, she stated "yes." Ms. Boston further testified that decedent's acknowledgment was made directly to her. On cross-examination, defense counsel merely asked whether she was present when Ms. Tucker was born and whether she was there when the birth certificate was written by the doctor. No further inquiries were made as to the factual basis for witness Boston's statement as to Della Mae Tucker's parentage.

Three of the plaintiffs testified that they lived in an open family unit with decedent, Parthenia White (his wife), and their mother, Della Mae Tucker, before and after their mother's death in 1969. Plaintiff Columbus Tucker testified that during the time he lived with decedent, decedent acknowledged that Della Mae Tucker was his daughter and that he was decedent's grandson. During the time they lived together, decedent bought him gifts and clothes, cared for him, and provided shelter and money for his education.

Plaintiff Sylvia Brice similarly testified that decedent paid for her college tuition, attended her college graduation, and openly acknowledged to her that Della Mae Tucker was his daughter and that she was his granddaughter.

Family pictures were entered into evidence showing decedent at various family functions with plaintiffs. The plaintiffs also gave detailed testimony on the family genealogy going back four generations.

In addition to similar testimony as to the decedent's contribution to the health care, upbringing, and education of the plaintiffs, plaintiff Odessa Brice testified that decedent purchased a car for her and, in connection with such purchase, executed a document entitled "Illinois Personal Auto Application." In that application, decedent indicated that he was purchasing the car for Ms. Brice and identified her as his granddaughter. Plaintiff Brice also referenced a birthday card she received in March 2002 which stated: "Granddaughter. Here's hoping that your birthday is so happy while its here. You'll wish you had one every day instead of once a year. Have fun. Grandpa Allen White." Both the auto application and the birthday card were admitted into evidence.

The defendants both acknowledged that the decedent had raised the plaintiffs in an open family relationship and stated that they did not have personal knowledge of whether decedent was the father of Della Mae Tucker. Moreover, both testified that although the decedent did not specifically acknowledge to them that Della Mae Tucker was his daughter, at no time did he deny to those witnesses that Della Mae was his daughter.

■ The statute provides that "paternity must be proved by clear and convincing evidence" (755 ILCS 5/2—2(h) (West 1994)), and Illinois courts have so held. *In re Estate of Severson*, 107 Ill. App. 3d 634, 639 (1982); *In re Estate of Olenick*, 204 Ill. App. 3d 291, 298-99 (1990).

We agree with plaintiffs that, in Illinois, a written acknowledgment of paternity is not required and that proof offered by way of testimonial and documentary evidence, uncontradicted by a disinter-

ested witness, is sufficient to prove paternity. *Kennedy v. Kennedy*, 93 Ill. App. 3d 88, 92 (1981).

The issues before us are not new. In 1905, our supreme court considered a case quite similar to the case at bar. In *Miller v. Pennington*, 218 Ill. 220 (1905), decedent was living with his first wife with whom he had four children. His wife's cousin, an unmarried woman, had two children: one in 1864 and the other in 1865. Years later, in 1902, decedent married the mother of the illegitimate children and lived with her until his death some two years later. He acknowledged to a number of people that he was the father of the two children. Many of these disinterested persons testified in the case. However, there was a significant amount of testimonial evidence of other witnesses that he had denied to them that he was the father of the parties, and that such denials were made both before and after he married their mother.

It should be noted that in the case at bar there was no testimony that the decedent ever denied that he was the father of plaintiffs.

In *Pennington*, the court observed:

"[The] acknowledgment required by the statute is a general and public one; that the father must show, by his acts, words and treatment of the child, that he regards, and desires the public to regard, it as his legitimate offspring and that all his acts and words, taken together, must show that he intends to make the child legitimate \*\*\*." *Pennington*, 218 Ill. at 224.

In its analysis, the court observed that no matter what the purpose of the acknowledgment was or whether the father intended to make the child his heir, the acknowledgment fixes the status of the child which cannot be changed by anything the mother or father might say afterward. *Pennington*, 218 Ill. App. at 226. Put plainly, the court stated: " 'Having removed the "bar sinister," they cannot replace it!' " *Pennington*, 218 Ill. at 226, quoting *Brock v. State ex rel. Johnson*, 85 Ind. 397, 399 (1882).

In *In re Estate of Healea*, 254 Ill. App. 334 (1929), as a result of the complex relationship between the purported mother and father, claimant had to first prove that Mary Healea was her mother and had left her on a relative's doorstep four weeks after her birth. The mother later intermarried with the decedent, with whom she had an ongoing relationship. From time to time over the years, decedent verbally acknowledged the child as his. He was particularly sensitive about her reputation, the status of an illegitimate child in those days being somewhat different than in current society. The court determined that decedent had made a proper and sufficient acknowledgment.

Similar to the case at bar, in *In re Estate of Waszkiewicz*, 42 Ill.

App. 2d 49 (1963), decedent married the mother of an illegitimate child and acknowledged him to be his son for a period of more than 36 years. Moreover, we note that secondary evidence of paternity, such as an individual's verbal acknowledgments, is appropriate evidence to be considered in such cases. *Olenick*, 204 Ill. App. 3d at 298.

■ In considering the evidence submitted, the defendants suggest that in *Kennedy*, the court acknowledged that "it is well settled that 'courts lend an unwilling ear to testimony by interested persons as to what a dead person has or has not said, and such evidence [should] be carefully scrutinized as well as considered with all the other evidence in the case.' " *Kennedy*, 93 Ill. App. 3d 83 at 92, quoting *Naden v. Naden*, 37 Ill. App. 3d 571, 574-75 (1976). In this case, the testimony comes from a disinterested person as well as the plaintiffs. Ms. Boston specifically stated that decedent acknowledged the paternity of Della Mae Tucker and such testimony remains uncontradicted.

In addition to the testimony of Ms. Boston, we give great weight to the fact that decedent, in purchasing a car for one of the plaintiffs, specifically stated that the purchase was for his granddaughter. Since a granddaughter is the daughter of one's daughter, such an acknowledgment is written evidence of the relationship. A similar conclusion can be drawn with respect to the birthday card given to one of plaintiffs wherein the decedent acknowledges himself as a grandfather of the birthday celebrant. And, as we have previously noted, descendants of a child born out of wedlock to parents who later marry and acknowledge that child as theirs are able to inherit from the decedent parents, as they are, legally speaking, grandchildren. *In re Estate of Janussek*, 281 Ill. App. 3d 233, 236 (1996).

Curiously, defense counsel asked each witness if he or she was present at the time of Della Mae Tucker's birth. Being present at someone's birth would not necessarily identify the father and most children are hardly likely to be present at their mother's birth. The statute does not provide that the witness be present at the birth of the child born out of wedlock, but merely that the alleged father *acknowledged* that the child is his. See 755 ILCS 5/2—2(h) (West 2002). There is ample testimony that Allen White acknowledged that Della Mae Tucker was his daughter and that the plaintiffs were his grandchildren. Moreover, there was no evidence in this case to counterbalance the plaintiffs', since defendants chose not to offer any.

Defendants speculate as to why decedent, if the plaintiffs were his grandchildren, would execute a will leaving his worldly possessions to defendants. On that issue, we note that as a part of the trial court proceedings and in the record on appeal, plaintiffs allege that decedent's last will and testament was not attested or notarized in

conformity with Illinois law and that the signature appearing on the will as decedent's may not, in fact, have been decedent's signature. It is further intriguing to note that decedent did not apparently know the gender of the person he appointed as his executor; but, the will contest is for another time.

In any event, we believe that the plaintiffs have satisfied the burden of clear and convincing evidence that decedent acknowledged paternity of Della Mae Tucker and that the order of the trial court was against the manifest weight of the evidence.

For the foregoing reasons, we reverse the decision of the trial court and remand to correct the table of heirship.

Reversed and remanded.

QUINN, P.J., and THEIS, J., concur.